**UNITED STATES of America, Appellee,**

**v.**

**Bruce BELL, Appellant.**

**No. 85–1632.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 15, 1985.

Decided March 10, 1986.

---

Karen L. Queen, Little Rock, Ark., for appellant.

Don Curdie, Asst. U.S. Atty., Little Rock, Ark., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and GUNN,* District Judge.

ARNOLD, Circuit Judge.

Bruce Bell appeals from the decision of the District Court for the Eastern District of Arkansas to revoke his probation for violating state and federal laws. With respect to one of the grounds upon which revocation was apparently based, the United States did not demonstrate the requisite "good cause" for dispensing with confrontation and instead admitting the hearsay evidence that constituted the government's case. We therefore vacate the judgment and remand to the District Court for further proceedings in accordance with this opinion.

I.

In 1980, Bell was convicted of conspiracy to possess cocaine with intent to distribute, a violation of 21 U.S.C. § 846, and of using the telephone to facilitate the conspiracy, a violation of 21 U.S.C. § 843(b). On the first count Bell was sentenced to three years' imprisonment. On the second count he was given two years of probation, consecutive to service of his sentence on Count I. Bell served 20 months in prison and a halfway house and completed 16 months of parole; his two-year probation period apparently began in December 1983. At the beginning of this period Bell lived in Ar-

---

* The Hon. George F. Gunn, United States District Judge for the Eastern District of Missouri, sitting by designation.

kansas, but in October 1984 he moved to Wichita, Kansas.

As a condition of his probation, Bell was required to "obey all local, state and federal laws." In March 1985 the government, alleging that Bell had violated this provision, petitioned for revocation of Bell's probation. The petition cited three instances in late 1984 in which urine samples taken from Bell tested positive for THC, indicating that Bell was using marijuana. It also stated that Bell had been arrested in February 1985 by Wichita, Kansas police for driving while intoxicated, possession of marijuana, and possession of narcotic paraphernalia. The petition alleged that, on this occasion, Bell was in fact guilty of the offenses of driving while intoxicated and possession of narcotic paraphernalia. It also left the clear implication that he was guilty of possession of marijuana as well.

On May 9, 1985 there was a hearing before the District Court on the revocation petition. The government presented two witnesses: Gary Duke, the probation officer who had explained the conditions of probation to Bell in 1980, and Arlo Lindsey, Bell's probation officer in Wichita, Kansas. Through Lindsey, the government introduced reports from the California chemical laboratory which analyzed Bell's urine and police reports of Bell's arrest.[1] There were two witnesses for the defense: Bell, and David Lehren, who had been Bell's probation officer when Bell lived in Arkansas. In cross-examining Lehren, government counsel elicited testimony from him concerning an Arkansas State Police investigation of Bell for dealing in cocaine. At the close of the hearing the District Court revoked Bell's probation.

## II.

Bell argues that his Sixth Amendment right to confront and cross-examine witnesses against him was violated by the introduction of three categories of evidence considered by the District Court: (1) the urinalysis lab reports, (2) the police reports of his arrest, and (3) Lehren's testimony about the suspicions of the Arkansas State Police that Bell was again involved in cocaine sales.

Bell's challenge is based on the requirements of *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). In *Morrissey*, the Supreme Court held that the Sixth Amendment confrontation clause affords parolees in parole-revocation proceedings

> the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation). [But such proceeding nevertheless is a] narrow inquiry ... flexible enough to consider ... material that would not be admissible in an adversary criminal trial.

408 U.S. at 489, 92 S.Ct. at 2604. *Gagnon* held that probationers are entitled to the same rights as *Morrissey* held applicable to parolees. 411 U.S. at 782, 93 S.Ct. at 1759. Addressing the right of confrontation, the *Gagnon* court responded to governmental concerns over the difficulty and expense of procuring distant witnesses by stating, "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." 411 U.S. at 783 n. 5, 93 S.Ct. at 1760 n. 5.

■ These decisions indicate that the trial court in a probation-revocation proceeding must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation. *United States v. Penn*, 721 F.2d 762, 764 (11th Cir.1983). As is true of any balancing test, it is not possible to articulate fixed rules on what the government must show to establish "good cause"

---

1. Bell had not at the time of the hearing, and apparently has not yet, been brought to trial on the Wichita charges.

in every case. However, there are several factors which should be evaluated in examining the basis cited by the government for dispensing with confrontation.

First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical. For example, the government might contend that live testimony would pose a danger of physical harm to a government informant, see *Birzon v. King,* 469 F.2d 1241, 1244 (2d Cir.1972), or, as suggested by *Gagnon,* that procuring live witnesses would be difficult or expensive.

A second factor that must be considered, and one that has been focused upon by a number of courts, is the reliability of the evidence which the government offers in place of live testimony. See, *e.g., United States v. Burkhalter,* 588 F.2d 604, 607 (8th Cir.1978); *United States v. McCallum,* 677 F.2d 1024, 1026–27 (4th Cir.), *cert. denied,* 459 U.S. 1010, 103 S.Ct. 365, 74 L.Ed.2d 400 (1982).[2] Thus, where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.

### III.

Assessing the evidence challenged by Bell, we conclude that the government met the good cause requirement in the case of the laboratory and police reports.[3] However, we agree with Bell that the good-cause requirement was not met for the testimony concerning the Arkansas State Police investigation.

The urinalysis laboratory reports bear substantial indicia of reliability. See *Penn,* 721 F.2d at 765. They are the regular reports of a company whose business it is to conduct such tests, and which expects its clients to act on the basis of its reports. Moreover, we note that no evidence was presented to contradict Bell's drug usage, and that Bell has made only general, unsubstantiated claims that the laboratory tests may have been defective.[4] We conclude that under these circumstances there was good cause to permit the government to avoid the difficulty and expense of bringing the chemist or chemists who performed the tests from California to Arkansas to testify. In our experience, that sort of formal testimony rarely leads to any admissions helpful to the party challenging the evidence.

The police reports of Bell's arrest do not bear the same indicia of reliability as the laboratory reports. Police reports are inherently more subjective than laboratory reports of chemical tests and are not intended by their authors to be relied upon in

2. This factor too is suggested by *Gagnon;* as the Eleventh Circuit has noted, *United States v. Penn,* 721 F.2d 762, 765 (11th Cir.1983), the substitutes for live testimony suggested by *Gagnon* generally bear the "indicia of reliability" which the Court emphasized in the related context of determining whether a particular hearsay statement is admissible in a criminal trial. See, *e.g., Ohio v. Roberts,* 448 U.S. 56, 65–68, 100 S.Ct. 2531, 2538–2540, 65 L.Ed.2d 597 (1980).

3. The District Court did not make an explicit finding that there was good cause for dispensing with confrontation. A finding to this effect, however, is implicit in its decision overruling Bell's objections to the evidence in question, which were based on both hearsay and Confrontation Clause grounds. As the District Court

observed, the rules of evidence as such do not apply in probation-revocation proceedings. Fed.R.Evid. 1101. But the right of confrontation under the Sixth Amendment does apply, and it must be honored unless the findings necessary to avoid it are made. Here, the record is sufficiently clear to enable us to review the District Court's implicit findings. A remand for that Court to make its findings explicit is not necessary.

4. Perhaps Bell's most substantial challenge to the accuracy of the laboratory reports is his observation that the specimens are sent unrefrigerated from Wichita to California via the United States mail; yet, Bell presented no evidence on whether or how this would affect testing for THC.

the same manner as laboratory reports. The relationship between police officers and those whom they arrest is much more personal and adversarial in nature than that between chemists and those whose urine they test. While police reports may be demonstrably reliable evidence of the fact that an arrest was made, see *United States v. Pattman*, 535 F.2d 1062 (8th Cir. 1976), they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true. We note that Congress exhibited similar doubts about the reliability of such reports when it specifically excluded them from the public records exception to the hearsay rule in criminal cases. See Fed.R.Evid. 803(8)(B). Furthermore, the officers who arrested Bell were subject to the District Court's subpoena power. Fed.R.Crim.P. 17(e)(1). They could have been called to testify in person to Bell's commission of the various offenses listed in the police report.

On the other hand, considerable expense would no doubt have been involved had the government secured, either under subpoena or voluntarily, the personal appearance of the Kansas officers. Whether this expense, coupled with whatever degree of customary reliability can be imputed to arrest reports, would constitute "good cause" for purposes of dispensing with the right of confrontation is a question we need not reach in the present case, because Bell's own admissions sufficiently corroborate the police reports to make it clear that they were indeed reliable. He concedes that he was driving on a public highway in the middle of the night without his lights on, and that he had been drinking. While "drinking," as such, is not necessarily sufficient to establish that one is driving while intoxicated within the meaning of a relevant criminal statute, these admissions do increase greatly our confidence in the arresting officers' account of the incident,

which is detailed and convincing. Having examined all of these reports and considered the force of Bell's own concessions, we are morally certain that no substantial purpose would have been served by requiring the officers' personal presence. They would simply have repeated what is in the reports, and none of the contentions made by Bell at his revocation hearing indicates that he would have been able to shake their account in any substantial way. Because of Bell's admissions, then, under the particular circumstances of this case, we believe the District Court was within its rights in finding implicitly that good cause for dispensing with confrontation had been established with respect to the Kansas police reports. We repeat that we are not endorsing the use of such reports in every revocation proceeding. Whether they are sufficiently reliable, and whether the expense and inconvenience of producing live testimony are sufficiently great, to justify dispensing with the right of confrontation, are questions to be faced on a case-by-case basis, considering all the relevant circumstances, including any admissions that may have been made by the probationer or parolee.[5]

David Lehren's testimony about an Arkansas State Police investigation of Bell for cocaine trafficking, however, is not sufficiently reliable. The District Court was presented not with the written report of the officers who conducted this investigation, but with Lehren's account of his conversations with the investigating officers. In at least one instance, Lehren testified of conversations with a third party, an FBI agent, not personally involved in the investigation; this would be "double hearsay." There was no showing whatever that producing the live testimony of the police officers involved would have presented any

---

**5.** Bell also argues that use of the arrest reports violated the Due Process Clause of the Fifth Amendment because he had not, as of the date of the hearing, been tried or convicted on the charges involved. We reject this argument. The petition for revocation of probation alleged that Bell had violated certain laws. Whether he

had done so was a question of fact properly triable by the District Court in the revocation proceeding. If the government can establish, as it did here, that a violation of law has occurred, it is not necessary for it also to show that the probationer had been convicted of that violation in a separate criminal prosecution.

significant difficulty. All of them were within the State of Arkansas, it seems.

The government explains that this testimony was introduced only to rebut or limit testimony Bell's counsel had brought out on direct examination. Bell had called Lehren as his own witness. Lehren had been Bell's supervising probation officer in Hot Springs, Arkansas, and Bell sought to establish through Lehren that Lehren had received generally good reports concerning Bell during the time of his supervision. We agree with the government that it was natural for it to want to establish, on cross-examination, that in fact what Lehren had heard about Bell was not so favorable to the probationer as one might have thought merely from the direct examination. Had the testimony been considered merely for the purpose of detracting from whatever weight Lehren's testimony might have carried in Bell's favor, we would have no problem with accepting this contention. But here the District Court seems to have relied on this evidence in deciding to revoke Bell's probation. See Tr. 36–37. In the course of its remarks explaining the decision to revoke, the court observed that Bell "may have been dealing in drugs." Tr. 37. The Lehren testimony was the only basis in the record for such a finding. For reasons we have already given, it was not sufficiently reliable to be used in this way as substantive evidence in the face of Bell's demand that his confrontation rights be respected.

The better course for us, therefore, is to remand this case so that the District Court can reconsider it, this time leaving clearly out of account the Lehren testimony about suspected cocaine dealing.

### IV.

In sum, we conclude that consideration of the laboratory and arrest reports was proper, but that reliance on Lehren's testimony about the Arkansas State Police investigation violated Bell's Sixth Amendment right to confront and cross-examine the witnesses against him. We remand to the District Court in order for it to make a new and explicit exercise of its discretion whether to revoke Bell's probation, on the basis of the violations established by the laboratory and arrest reports alone, and without regard to any suspicions of cocaine dealing that may have been raised by the cross-examination of David Lehren. If the District Court reaffirms its earlier decision, the judgment revoking probation will stand affirmed.

Vacated and remanded with instructions.