### State v. Smith
*[Cite as 8 AOA 197]*

*Case No. CA 1847*
*Scioto County, (4th)*
*Decided November 14, 1990*

*Mr. John R. Stevenson, Portsmouth, Ohio, for Appellant.*

Mr. Lynn A. Grimshaw, Scioto County Prosecutor's Office, Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

HARSHA, J.,

This matter is before us on appeal from the judgment of the Scioto County Court of Common Pleas revoking appellant's probation.

We affirm the trial court's judgment.

On October 16, 1984, appellant was found guilty of violating R.C. 2911.12, burglary and R.C. 2913.02, petty theft. The court sentenced appellant to a term of five to fifteen years imprisonment for the burglary and a concurrent six month term for the petty theft. Appellant filed a motion for super shock probation pursuant to R.C. 2947.061(B). The court granted the motion on June 3, 1985 and placed appellant on probation for a term of five years. On August 22, 1989, probation officer Rodney Honaker filed a motion to revoke appellant's probation, alleging that appellant had violated Rule No. 1 of the terms of his probation in that he was found guilty of contributing to the unruliness of a minor in municipal court on August 3, 1989, and alleging that appellant had tested positive for the use of marijuana. A probation revocation hearing was conducted on September 21, 1989. The court held that appellant did violate Rule No. 1 of his probation, not to commit other crimes, and revoked appellant's probation remanding him into the custody of the sheriff to serve the original sentence.

Appellant asserts the following in his first assignment of error:

THE TRIAL COURT COMMITTED ERROR IN ALLOWING TESTIMONY REGARDING THE RESULTS OF A URINE TEST AND USING SAID EVIDENCE AS A BASIS FOR REVOKING APPELLANT'S PROBATION.

The probation officer testified as to the results of the urinalysis conducted on appellant to determine whether appellant had ingested marijuana. Appellant objected to the introduction of such testimony on the basis that the probation officer had no personal knowledge as to who performed the test, how it was performed, the basis or type of test performed, whether the sample was contaminated, etc. The probation officer was only able to testify that he took a urine sample from appellant, placed a label on the specimen and mailed it to the laboratory in California which apparently tested the specimen. The probation officer testified that he received a lab report indicating that appellant tested positive for marijuana. Appellant argues that minimum due process includes the right to confront and cross-examine the adverse witness who has direct, personal knowledge as to the urinalysis. *Morrissey v. Brewer* (1972), 408 U.S. 471; *State v. Miller* (1975), 42 Ohio St. 2d 102.

The Fourteenth Amendment guarantees a probationer a conditional right to confront and cross-examine adverse witnesses at probation revocation hearings. *Gagnon v. Scarpelli* (1973), 411 U.S. 778, 786. The probation revocation proceeding is not part of the formal criminal process but is instead "an informal hearing structured to assure the finding of a *** [probation] violation will be based on verified facts and that the exercise of discretion will be informed by an accurate knowledge of the *** [probationer's] behavior." *Morrissey, supra,* at 484. Therefore, the right to confrontation is a procedural protection guaranteed by the Fourteenth Amendment and not a substantive protection guaranteed by the Sixth Amendment. *Id.* at 477-480. Consequently, the process must be flexible and permit the introduction of documentary evidence to support revocation. *Id.* at 485-487; *Gagnon, supra,* at 782, fn. 5. Ultimately, the right to confrontation is not an absolute right, but is subject to a finding of good cause for denying the right. *Morrissey, supra,* at 489; *Gagnon, supra,* at 786. *State v. Kinney* (Dec. 8, 1989), Ross Co. App. No. 1541, unreported.

While the United States Supreme Court has not set forth a standard for showing good cause, several state and federal courts have addressed the issue. First, in order to come within the exception, there must be an explicit, specific finding of good cause, and the reasons establishing good cause should be stated in the record. *U.S. v. Penn* (C.A.11, 1983), 721 F.2d 762; *State v. Miller, supra; Columbus v. Lacey, supra;* and *State in Kinney, supra.* In making the required finding, the trial court must balance the probationer's right to confront witnesses against the grounds asserted by the state for not requiring confrontation. In doing so, the trial court may take guidance from the U.S. Supreme Court's characterization of the probation revocation process set forth in *Morrissey, supra,* and *Gagnon, supra.* Probation revocation is not part of the criminal trial. It arises only after conviction and deprives an individual not of the absolute liberty to which all citizens are entitled, but only *conditional* liberty, properly dependent upon observance of special probation

restrictions The state has an overwhelming interest in being able to revoke probation and imprison a convicted felon without the burden of a new criminal trial if, in fact, he has failed to abide by the conditions of his probation. What is needed is an informal hearing structure to assure that the finding of a violation will be based upon verified facts and that the exercise of discretion will be informed by an accurate knowledge of the probationer's behavior. This may be a narrow inquiry. The process should be flexible enough, upon a showing of good cause, to consider evidence, including letters, affidavits, and other material that would not be admissible in an adversary criminal trial. See *Morrissey, supra*, pgs. 480, 483, 484, 489; *Gagnon, supra*, fn.5.

In conducting the balancing of interest set forth above, the court may consider whether or not the live testimony would pose a danger of physical harm to an informant, or that procuring a live witness would be difficult or expensive. See *U.S. v. Bell* (C.A. 8, 1986), 785 F.2d 640, 643. A second factor that must be considered is the reliability of the evidence which the government offers in place of live testimony. *Id.* at 643. "Reliability can be inferred without more where evidence falls within a firmly rooted hearsay exception." *Ohio v. Roberts* (1980), 448 U.S. 56, 66. Thus, where the state demonstrates that the burden of producing live testimony would be expensive or logistically difficult and offers in its place reliable hearsay evidence, it has made a strong showing of good cause. *U.S. v. Bell, supra*, at 643. "Specifically, good cause is shown where the record demonstrates that the state would incur difficulty and expense in procuring live witnesses and the evidence is demonstrably reliable." *Columbus v. Lacy* (1988), 46 Ohio App. 3d 161, 164 (citing to *United States v. Penn* (C.A.11, 1983), 721 F. 2d 762, 765; *United States v. Bell* (C.A.8, 1986), 785 F. 2d 640, 642-643; *United States v. McCallum* (C.A.4, 1982), 677 F. 2d 1024, 1026, cert. denied (1982), 459 U.S. 1010). where the record fails to demonstrate that presenting live testimony would be unreasonably burdensome and fails to offer hearsay evidence that bears indicia of reliability, then the probationer is entitled to confrontation. *Bell, supra*, at 643.

Here, the state presented only the testimony of the probation officer. It did not present the laboratory technician who received and tested the urine specimen. The state did not present the testimony of the custodian of records who had any knowledge of or responsibility for the records maintained by the laboratory. The state did not produce the testimony of any witness who was competent to testify as to the routine procedure used by the laboratory in receiving, handling and testing urine samples for analysis. Further, the state did not lay the proper foundation to demonstrate that the report was admissible as an exception to the hearsay rule, nor is there any evidence which would otherwise demonstrate the inherent trustworthiness of the urinalysis results. As such, the record is totally devoid of evidence which would support a finding of good cause to overcome appellant's conditional right to confront and cross-examine adverse witnesses regarding the urinalysis results.

In its brief, the state maintains that even if the court did improperly permit the witness to testify, it is harmless error since the trial court did not use the urinalysis results as a basis for revoking appellant's probation. "Error in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction. In order to hold the error harmless, the court must be able to declare a belief that the error was harmless beyond a reasonable doubt." *State v. Bayless* (1976), 48 Ohio St. 2d 73, 106.

After reviewing the court's order revoking appellant's probation, we note that the court does not make a finding that appellant had used marijuana while on probation. The court states that appellant's probation was revoked because he violated Rule No. 1, that is, appellant committed a crime while on probation as evidenced by the certified copy of conviction in municipal court. Even though the trial court improperly permitted the probation officer to testify as to the results of the urine test, it did not premise its decision on that testimony. Therefore, any error is harmless error. Appellant's first assignment of error is overruled.

Appellant asserts the following in his second assignment of error:

THE TRIAL COURT COMMITTED ERROR IN ALLOWING TESTIMONY OF AN INDIRECT NATURE THAT THE APPELLANT HAD VIOLATED RULE ONE OF HIS PROBATION BY "COMMITTING OTHER CRIMES."

Appellant asserts that the trial court erred in allowing the introduction of a certified copy of conviction in case number 589-CRB-1793 of one

Gerald Smith to prove that appellant had committed another crime in violation of his probation. Counsel objected to the introduction of this document on the basis that the state did not present any witness who could identify the Gerald Smith from case number 589-CRB-1793 as the Gerald Smith in the probation revocation proceedings.

The state argues that the probation officer possessed sufficient personal knowledge that the Gerald Smith referenced in the conviction entry and the Gerald Smith present for the parole revocation were the same person. The probation officer testified that the Gerald Smith in the courtroom was the Gerald Smith who had been arrested on July 18, 1987 and charged with the offense of contributing to the unruliness of a minor. On the date of the arrest, the probation officer went to the jail and took a urine sample from that Gerald Smith.

There is no doubt that the probation officer had the requisite personal knowledge to testify to the above matters; however, the state did not present any additional evidence which would identify appellant as the Gerald Smith in the conviction entry. This could have been accomplished by matching birthdays, social security numbers or BCI numbers. A certified copy of a conviction is not sufficient evidence to prove a conviction, absent some evidence of identification. Certainly the state has not established the appellant's identity beyond a reasonable doubt. However, the quantum of proof required to support a revocation of probation need only be of a substantial nature. *State v. Scott* (1982), 6 Ohio App. 3d 39; *State v. Mingua* (1974), 42 Ohio App. 2d 35. Accordingly, while the state would be well-advised to introduce further evidence of identity, the trial court did not error in revoking appellant's probation. Appellant's second assignment of error is overruled.

Appellant's third assignment of error states:

THE TRIAL COURT COMMITTED ERROR
IN ALLOWING EVIDENCE OF AN
UNCOUNSELED NO CONTEST PLEA TO
BE USED AGAINST HIM IN A PAROLE
REVOKATION (sic) HEARING.

Appellant argues that state's exhibit 1, the certified copy of conviction, should have been excluded from evidence at the trial since appellant had pleaded no contest to that charge. Appellant relies upon Crim. R. 11(B) (2) which provides that a no contest plea "shall not be used against the defendant in any subsequent civil or criminal proceedings." Appellant also directed our attention to *Springdale v. Hubbard* (1977), 52 Ohio App. 2d 255.

The Ohio Supreme Court, in *State v. Mapes* (1985), 19 Ohio St. 3d 108, 111, stated "Crim. R. 11(B) (2) and Evid. R. 410 prohibit only the admission of a no-contest plea. These rules do not prohibit the admission of a conviction entered upon that plea when such conviction is made relevant by statute." *Mapes* addressed the analogous issue of whether the state could use a prior conviction following a no contest plea to prove a prior murder specification under R.C. 2929.04(A) (5). Here, the state introduced evidence of a prior conviction following a no-contest plea to prove that appellant had committed other crimes while on probation, thereby violating Rule No. 1 of his probation. As in *Mapes*, the state sought the admission of the prior conviction, not the introduction of the no-contest plea. Based upon the rationale of *Mapes*, we hold that the conviction is admissible, pursuant to Crim. R. 11(B) (2) since it is relevant to the issue of whether appellant had committed other crimes.

Appellant's third assignment of error is overruled.

Appellant alleges in his fourth assignment that:

THE TRIAL COURT COMMITTED ERROR
IN ALLOWING EVIDENCE OF AN
UNCOUNSELED NO CONTEST PLEA IN
VIOLATION OF THE APPELLANTS (sic)
RIGHTS UNDER THE SIXTH AMENDMENT
TO THE U.S. CONSTITUTION AND ARTI-
CLE I, SECTION 10 OF THE
OHIO CONSTITUTION.

Appellant contends that since uncounseled pleas cannot be used to enhance a penalty, *Baldasar v. Illinois* (1979), 440 U.S. 367, then a similarly uncounseled plea cannot be used in a parole revocation hearing.

The right to counsel is guaranteed by the Sixth Amendment of the U.S. Constitution and incorporated to apply to state actions by the Fourteenth Amendment. "[T]he Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the state has afforded him the right to assistance of appointed counsel in his defense." *Scott v. Illinois* (1979), 440 U.S. 367.

Crim. R. 44(B) reflects the holding in *Scott, supra*, and provides:

"Counsel in petty offenses.

"Where a defendant charged with a petty offense is unable to obtain counsel, the court may assign counsel to represent him. When a defendant charged with a petty offense is unable to obtain counsel, no sentence of confinement may be imposed upon him, unless after being fully advised by the court, he knowingly, intelligently, and voluntarily waives assignment of counsel."

Crim. R. 32.3 provides when counsel shall be appointed at probation revocation hearings:

"(B)Counsel.

"The defendant shall have the right to be represented by retained counsel and shall be so advised. Where a defendant convicted of a serious offense is unable to obtain counsel, counsel shall be assigned to represent him, unless the defendant after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel. Where a defendant convicted of a petty offense is unable to obtain counsel, the court may assign counsel to represent him.

"(C)Confinement in petty offense cases.

"If confinement after conviction was precluded by Rule 44(B), revocation of probation shall not result in confinement.

"***

The Supreme Court in *State v. Delaney* (1984), 11 Ohio St. 3d 231, addressed the issue of whether the court may revoke probation when the sole reason for the revocation is the probationer's conviction, without the assistance of counsel, of a petty offense. The court held where an uncounseled conviction is the sole basis for the trial court's determination, Crim. R. 32.3(C) and 44(B) would not have precluded appellant's confinement as a result of the reimposition of his original jail sentences. In support of its position, the supreme court adopted the following rationale set forth by the court of appeals which heard the *Delaney* case:

"The purpose of Crim. R. 32.3(C) is to protect the probationer from receiving a more harsh punishment upon revocation than he could have received upon conviction of his original offense.

"In the instant case there is nothing in Crim. R. 44(B) that bars appellant from being confined for the crimes for which he was originally placed on probation by the court of common pleas. Therefore, Crim. R. 32.3 does not forbid confinement for revocation of probation in this case." *Id.* at 235-236.

Based upon the holding in *Delaney*, we must conclude that an uncounseled plea may be used in a probation revocation hearing. The cases cited by appellant are inapposite in that they address the issue of using uncounseled pleas for penalty enhancement as opposed to probation revocation. Appellant's fourth assignment of error is overruled.

Appellant asserts in his fifth assignment of error that:

THE SEPTEMBER 22ND, 1989 DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

The appellant's final proposition is that the trial court's decision was not supported by sufficient probative evidence. Upon review of the record, and in light of the discussion of the foregoing assignments, we hold that substantial evidence supports the judgment of the trial court.

Accordingly, the judgment of the trial court is affirmed.

GREY, J., dissents.

STEPHENSON, J., concurs for the court in judgment only.