**STATE of Missouri ex rel. Maderia MACK, Petitioner,**

v.

**James D. PURKETT, Superintendent, Farmington Correctional Center, Respondent.**

No. 74036.

Supreme Court of Missouri, En Banc.

Feb. 28, 1992.

Craig A. Johnston, Columbia, for petitioner.

William L. Webster, Atty. Gen., Michael E. Pritchett, Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

Petitioner Maderia Mack seeks a writ of habeas corpus. He has been denied relief by the circuit court and the Missouri Court of Appeals, Eastern District. Petitioner complains of a violation of his constitutional rights in the conduct of a parole violation hearing that deprived him of his liberty. Petitioner is ordered discharged from the effects of the revocation of his parole.

Mack pled guilty to one count of forcible rape and four counts of robbery in the first degree on January 19, 1983. He was sentenced to ten years imprisonment and delivered to the Department of Corrections. On June 8, 1986, Mack was paroled by the Board of Probation and Parole (Board). On about November 1, 1990, a parole violation warrant was issued for Mack's arrest. He was placed in custody in the City of St.

Louis. Mack waived his right to a preliminary hearing on the parole violation charge and was transferred to the Department of Corrections in Fulton, Missouri. He was provided with a copy of the parole violation report.

A revocation hearing was scheduled for January 4, 1991. Mack and his appointed counsel appeared before the Board. Two charges of parole violation were made: 1) possession of a controlled substance and 2) violation of laws and ordinances. Mack denied he had violated his parole, claimed he had been denied the opportunity to make telephone calls to contact five witnesses, and asked that the arresting officers attend the hearing. Mack was informed that he would be given one telephone call and one stamped envelope and would be given the opportunity to speak further with his attorney. The hearing was continued to January 23, 1991.

On January 23 Mack again was present with his attorney. He again denied the charges and complained that one telephone call was inadequate. He asked again that he be allowed to confront and cross-examine arresting officers. No live witnesses were present. The only evidence before the Board was three parole violation reports. The first two were prepared by a parole officer in St. Louis and the third was prepared by a parole officer at Fulton.

The reports are apparently summaries or extracts from earlier reports by police officers and laboratory reports. The reports give somewhat detailed accounts of Mack's arrest in the City of St. Louis on October 20, 1990, for urinating in public, an ordinance violation, and possession of heroin. The reports also describe Mack's arrest for possession of heroin on October 29, 1990. Also recounted in the violation reports are police laboratory reports concluding that the substances seized from petitioner when he was arrested were found to be heroin. Conspicuously absent are the names of the arresting officers, the author or authors of the laboratory reports, the kind of chemical analysis conducted, and the names of other witnesses who gave information leading to the arrests.

Based entirely on the parole revocation reports, the Board issued an Order of Revocation that stated,

[S]aid charges which warrant revocation are sustained, to wit:

1) LAWS: I will obey all the federal and state laws, municipal and county ordinances. I will report all arrests to my P.O. within 48 hours.

2) DRUGS: I will not have in my possession or use any controlled substance except as prescribed for me by a licensed medical practitioner.

* * * Evidence relied upon for violation [is] from the Violation Reports dated 11/1/90 and 11/13/90.

On June 21, 1991, Mack was sentenced to five years in the Department of Corrections to be served consecutively to his other sentences. This conviction stems from the October 20, 1990, arrest for possession of heroin. Charges were dismissed for the October 29 arrest. The possession of heroin conviction obviously was not before the Board. Mack is now in the custody of the Department of Corrections at Farmington, Missouri.

■ At the outset the respondent claims that the writ of habeas corpus should be quashed because Mack is now incarcerated for possession of heroin, serving a five-year sentence. Therefore, respondent argues, Mack is not entitled to release. The respondent also concedes that the conviction is currently on appeal. A convicted defendant is entitled to conditional release pending appeal. *Rule 30.16.* But for the parole revocation, petitioner would be entitled to conditional release. The fact that the prisoner is not entitled to absolute release does not provide a basis for denying relief by way of habeas corpus. It is sufficient that he claims denial of a substantial liberty interest. *McIntosh v. Haynes,* 545 S.W.2d 647, 652 (Mo. banc 1977).

■ Respondent also argues that the writ should be quashed because of petitioner's failure to file a reply to the respondent's return. Initially this Court issued an order to show cause why a writ of habeas corpus should not issue. On Au-

gust 14, 1991, a response was filed. On September 6, 1991, petitioner filed a "denial" and "traverse" to the response. The Court then issued a writ of habeas corpus requiring a return. The return was filed on October 10, 1991. On November 25, 1991, Mack filed a *pro se* document seeking appointment of counsel and "objecting to" the return. Counsel was then appointed. Generally, in habeas corpus "the issues are framed by the return and the traverse by way of reply." *Abel v. Wyrick,* 574 S.W.2d 411, 415 n. 1 (Mo. banc 1978). Nevertheless, it is preferable not to dismiss a habeas corpus proceeding on a technical point, especially where a prisoner is without counsel when a pleading was due to be filed and federal constitutional violations are alleged. Petitioner's failure to file a reply to the return, denominated as such, is not fatal. His pleadings, taken together, are adequate to identify the issues in the case.

■ We turn first to the claim that petitioner was denied the right to due process. The minimum requirements of due process in a final parole revocation hearing include:

a) written notice of the claimed violations of parole;

b) disclosure to the parolee of evidence against him;

c) opportunity to be heard in person and to present witnesses and documentary evidence;

d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation);

e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and

f) a written statement by the factfinders as to the evidence relied on and the reasons for revoking the parole.

*Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 2604, 33 L.Ed.2d 484 (1972). The hearing is not to be equated with a criminal prosecution. It should be "flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* "While in some cases

there is simply no adequate alternative to live testimony, we emphasize that we did not in *Morrissey* intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." *Gagnon v. Scarpelli,* 411 U.S. 778, 782, 93 S.Ct. 1756, 1760 n. 5, 36 L.Ed.2d 656 (1973).

The *Morrissey* court noted that most states have legislation that defines the code of procedure applicable in parole violation proceedings. Missouri has not adopted a specific procedure applicable to parole violation hearings. In Missouri, after an offender is detained for a parole violation, the Board "shall cause the offender to be brought before it for a hearing on the violation charged, under such rules and regulations as the board may adopt." § *217.720.2,* RSMo Supp.1991. The regulations of the Board regarding the procedure at the hearing merely restate the minimum due process requirements articulated in *Morrissey.* *14 C.S.R.* 80–4.030.

■ Petitioner first claims a violation of his due process right to "confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." He claims that he was denied this right because the only evidence against him was the parole violation reports.

Petitioner relies primarily on *In re Carson,* 789 S.W.2d 495 (Mo.App.1990). There the Missouri Court of Appeals, Southern District, was confronted with a record not dissimilar from that presented here. A judicial probation had been revoked based solely on a written probation violation report and an unsigned laboratory report indicating cocaine had been detected in the probationer's urine. The court concluded that by not being able to confront and cross-examine the persons who provided the evidence, the petitioner's due process rights were violated. 789 S.W.2d at 497. Petitioner argues that under *Carson,* the use of hearsay is a violation of his due process rights.

Respondent's primary authority is *Moore v. Stamps*, 507 S.W.2d 939 (Mo.App.1974). There the petitioner's suspended sentence was revoked following a probation violation hearing at which two police officers testified. One observed the petitioner taking a vehicle from a parking lot. The second officer arrested petitioner and checked the vehicle's ownership to a Mr. LaRose. Over petitioner's objection, the second officer was allowed to testify that LaRose said he owned the vehicle and that neither LaRose nor his wife had given petitioner permission to drive the vehicle. The court concluded that hearsay may form the basis for a revocation as long as the probationer or his counsel may cross-examine the witnesses present. 507 S.W.2d at 949. At least superficially, *Moore* and *In re Carson* appear to be in conflict.

▮ The same conflict appears to exist in cases from other states as well as federal cases.[1] The confusion is due in part to efforts to equate the hearsay rule and its numerous exceptions to the due process right to confront witnesses. The United States Supreme Court has not seen fit to "map out a theory of the Confrontation Clause that would determine the validity of all ... hearsay 'exceptions.'" *Ohio v. Roberts*, 448 U.S. 56, 64–65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980) (quoting *California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 1937, 26 L.Ed.2d 489 (1970)). *See also White v. Illinois*, —— U.S. ——, 112 S.Ct. 736, 741, 116 L.Ed.2d 848 (1992). Even though the right to confrontation and the hearsay rule are designed to protect the same values, the right to confrontation and the hearsay evidence rule are not the functional equivalent of each other. *McCormick on Evidence* § 252, at 752 (E. Cleary ed., 1984). As *Morrissey* and *Gagnon* make clear, the due process right to confrontation at a parole revocation hearing is less stringent than the Sixth Amend-

ment's confrontation guarantee in a criminal trial. Evidence that would violate the Sixth Amendment or would be inadmissible hearsay if presented at a criminal trial may, in proper circumstances, be considered at a parole or probation revocation hearing without violating the due process right to confrontation.

▮ The exact boundaries of the right to confrontation in a parole revocation hearing are imprecise and can only be measured on a case-by-case basis. However, the cases indicate that in deciding whether to consider hearsay at a revocation hearing, the fact finder must engage in a balancing process. The parolee's right to confront witnesses is balanced against the grounds asserted by the government for not requiring confrontation. *United States v. Simmons*, 812 F.2d 561, 564 (9th Cir.1987); *United States v. Bell*, 785 F.2d 640, 642 (8th Cir.1986). Several factors must be evaluated in examining the government's basis for dispensing with confrontation.

First, the fact finder must assess why confrontation is undesirable or impractical. Where it would be difficult or expensive to procure live witnesses because of long distances involved, such fact militates in favor of not requiring attendance of the witnesses. *Gagnon*, 93 S.Ct. at 1760 n. 5. A risk of harm to witnesses weighs in favor of denying confrontation. *Foy v. Bounds*, 481 F.2d 286, 289 (4th Cir.1973); and *Birzon v. King*, 469 F.2d 1241, 1244 (2d Cir. 1972). The risk of interference with a pending criminal investigation may, in appropriate cases, weigh in favor of denying confrontation of a particular witness. *United States ex rel. Carson v. Taylor*, 540 F.2d 1156, 1163 (2d Cir.1976). Lesser administrative problems, such as inconvenience, weigh less heavily when balanced

1. For examples of cases in which admission of hearsay was held not to violate due process in the context of a parole or probation hearing, see *United States v. Simmons*, 812 F.2d 561 (9th Cir.1987); *United States v. Burkhalter*, 588 F.2d 604 (8th Cir.1978); *Prellwitz v. Berg*, 578 F.2d 190 (7th Cir.1978); *United States v. Pattman*, 535 F.2d 1062 (8th Cir.1976); and *Wheeler v.*

*State*, 344 So.2d 630 (Fla.App.1977). *But see Gholston v. Jones*, 848 F.2d 1156 (11th Cir.1988); *State v. Fuller*, 308 Md. 547, 520 A.2d 1315 (App.1987); and *Hill v. State*, 350 So.2d 716 (Ala.Crim.App.1977), all holding that admission of hearsay violated a parolee's or probationer's due process right to confrontation.

against the parolee's right to confront witnesses. *Grello v. Commonwealth,* 83 Pa. Commw. 252, 477 A.2d 45, 46–47 (1984) (a witness living more than fifty miles from the site of the hearing did not establish good cause to deny confrontation); *Wagner v. Commonwealth,* 92 Pa.Commw. 132, 498 A.2d 1007, 1009 (1985) (the fact that a witness was "too busy" to attend the revocation hearing was insufficient good cause, but inability of the witness to leave work may be sufficient).

A second factor that must be considered is whether the hearsay evidence sought to be admitted bears substantial indicia of reliability. *United States v. Burkhalter,* 588 F.2d 604, 607 (8th Cir.1978). Exceptions to the hearsay rule have developed in large part due to a recognition that evidence may be reliable although it was uttered outside the hearing of the fact finder. Thus, hospital records have been held to have the traditional indicia of reliability accorded business records and may be considered in a revocation hearing. *United States v. Simmons,* 812 F.2d at 564. *See also McCormick on Evidence,* § 313, at 882–85 (E. Cleary ed., 1984). Similarly, laboratory reports prepared by those whose business it is to make chemical analysis reports upon which clients of the laboratory are expected to rely have been held to have substantial indicia of reliability. *United States v. Bell,* 785 F.2d at 643. However, an unsigned laboratory report indicating that a "screening procedure" showed cocaine in the prisoner's urine lacked sufficient indicia of reliability. *In re Carson, supra.* Even police reports may be demonstrably reliable evidence of the fact that a parolee was arrested. *United States v. Pattman,* 535 F.2d 1062, 1064 (8th Cir.1976). However, police reports have been held not to bear sufficient indicia of reliability as to the details of criminal conduct because the reports are inherently more subjective than laboratory reports and are not intended to be relied upon in the same manner as a laboratory report. *United States v. Bell,* 785 F.2d at 643–44. Merely identifying a person who was arrested is not subject to the dangers of inadequate perception, memory or narration, while reporting details of a criminal investigation is subject to such dangers.

In some instances, probation violation reports have been held to have reliability because of their status as business records. For example, a parole officer's records showing unsuccessful attempts to contact a parolee have been held reliable. *Prellwitz v. Berg,* 578 F.2d 190, 191–93 (7th Cir.1978). But where the only evidence at a revocation hearing was a parole violation report that consisted of information that had in turn been obtained from police reports, the parole violation reports were held not to have sufficient indicia of reliability. *Hill v. State,* 350 So.2d 716, 717–18 (Ala.Crim.App. 1977).

Hearsay may have indicia of reliability because it is corroborated in whole or in part by the testimony of live witnesses or by admissions of the parolee. *United States v. Bell,* 785 F.2d at 644. Other evidence that might violate strict hearsay rules has been held to have sufficient reliability to justify consideration by the fact finder. Hearsay as to the ownership of a vehicle is a fact that may be disclosed by reference to public records. The fact of ownership and the absence of the owner's permission to allow another to take the vehicle are not the kind of facts that are usually subject to weaknesses in the perception, narration or memory of the owner of a vehicle. Thus, such hearsay was held demonstrably reliable when used in conjunction with the testimony of live witnesses who saw the probationer take a vehicle. *See Moore v. Stamps, supra.*

An additional factor to be considered in the balancing process is whether the parolee challenges the accuracy of the hearsay evidence during the course of the hearing. *United States v. Simmons,* 812 F.2d at 564; *United States v. Bell,* 785 F.2d at 643. The failure of the parolee or probationer to complain regarding the accuracy of the evidence and assert that he is being denied the right to confront and cross-examine witnesses weighs heavily in favor of denying such claim in a subsequent habeas corpus proceeding.

In this case, the Board made no specific findings of good cause for using hearsay. At one point during the hearing, the presiding officer stated that the Board lacked power to issue subpoenas. Assuming that is correct, there is still no explanation as to why the Board did not recess to attempt to obtain the voluntary live testimony of at least one of the arresting officers or some conventional substitute [2] for live testimony. The claim that the Board is not authorized to issue subpoenas is not reiterated in the respondent's brief.

The brief argues that good cause is demonstrated by the "administrative nightmare" of transporting parole officers, police officers and laboratory technicians to Fulton from St. Louis. Bare assertions of administrative inconvenience are perhaps the weakest justification for denying confrontation. This is especially true where there is no effort to present any live witnesses or a conventional substitute for live witnesses that can confirm a single element of the cause for revocation.

More importantly, waiting until now to make the administrative inconvenience argument violates the clear requirement of *Morrissey* that the "hearing officer specifically find good cause for not allowing confrontation." Undoubtedly, that requirement must be met as a precondition to considering purely hearsay statements of persons not subject to confrontation. The determination of "good cause" required by *Morrissey* was not intended to be developed as an afterthought in habeas corpus proceedings. If the witnesses are unavailable, unable or unwilling to attend or the cost of transporting them is too great, the Board should disclose its reason at the hearing and the parolee should have an opportunity to factually refute the Board's conclusion. In sum, the respondent has failed to demonstrate that it would be an inordinate burden for the Board to call at least one of the arresting officers as a witness at the revocation hearing. Such testimony, accompanied by a copy of the laboratory reports, would most likely have obviated the due process claim.

Furthermore, the hearsay considered by the Board was not shown to be demonstrably reliable because it fell within one of the traditional exceptions to the hearsay rule, because it was corroborated in part or wholly by live testimony, or because the hearsay was otherwise reliable. In particular, the hearsay aspect of the violation reports was compounded because those reports relied on earlier reports of police officers and laboratory employees. To be admissible under the business records exception to the hearsay rule, a document must be based on the author's own observations or on the firsthand knowledge of another employee of the same business whose duty it is to transmit facts to the author. *State v. Boyington,* 544 S.W.2d 300, 305 (Mo.App.1976). Police officers and parole officers work for different agencies. The reports of the former do not qualify as business records of the latter. *McCormick on Evidence,* § 312, at 881–82 (E. Cleary ed., 1984). Thus, the reliability of the parole violation reports has not been demonstrated.

Finally, the petitioner has consistently challenged the accuracy of the reports, claiming he did not violate his parole. He has consistently requested the opportunity to confront and cross-examine the arresting officers. We conclude that in balancing petitioner's right to confrontation against the Board's justification for denying confrontation, petitioner's due process rights were violated under the *Morrissey* standards.

In reaching our conclusion, the Court rejects petitioner's argument that *In re Carson,* 789 S.W.2d 495 (Mo.App.1990), holds that laboratory reports and parole

---

**2.** For example, a deposition at which counsel for the parolee is present and permitted to cross-examine the arresting officer would likely satisfy due process. If petitioner had a preliminary hearing in either of the possession of heroin cases, the Board could have sought the cooperation of the judge presiding at the preliminary hearing in order to preserve the arresting officer's testimony. A recording of the officer's testimony would meet any complaint that the parolee was denied his due process right to confrontation. Neither of the procedures suggested would require the exercise of the subpoena power by the Board.

violation reports are generically unreliable. *Carson* holds only that an unsigned laboratory report making reference to an unidentified "screening procedure" that confirmed cocaine in a urine sample of the petitioner "lacked any indicia of reliability." 789 S.W.2d at 496. No other factors weighing in favor of denying confrontation were discussed in the opinion. It is fair to conclude that no other factors were found to exist by the court. *Carson* is not authoritative beyond the narrow facts with which that case dealt.

Petitioner raises two interrelated points regarding his inability to communicate with five witnesses and his right to have the witnesses subpoenaed to the hearing at the state's expense. Petitioner has failed to develop the record showing that he was forbidden from communicating with his attorney who, in turn, could have communicated with witnesses. He has also failed to establish that his witnesses would provide mitigating or exculpatory evidence. Mack only concludes that his witnesses would confirm that the October 29, 1991, arrest was the result of police harassment. That would not be a justification for possession of heroin. Thus, he has failed to demonstrate prejudice. Accordingly, those two claims are rejected.

Petitioner raises another point in which he asserts that the revocation order did not have a sufficient and detailed written statement of the evidence relied on and the reasons for revoking parole, as required by due process. Inasmuch as this Court is ordering that petitioner be restored to his status as parolee, subject to a new revocation proceeding, this point is now moot.

Petitioner is discharged from the revocation of his parole and restored to his status as a parolee without prejudice to the Board instituting further revocation proceedings. This order of discharge from the effects of the revocation of petitioner's parole should not be considered as a grant of any relief from the judgment of the circuit court of the City of St. Louis entered on June 21, 1991, sentencing defendant to the Department of Corrections for a period of five years.

All concur.