# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2773
_____

United States of America

*Plaintiff - Appellee*

v.

Leonard Joseph Smith

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: March 15, 2013
Filed: July 2, 2013

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HOLMES,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

After finding that Leonard Joseph Smith had violated mandatory, standard, and special conditions of his supervised release, the district court[2] revoked Smith's release

_____

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for the Western District of Arkansas, sitting by designation.

[2]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

and sentenced him to thirty-one months' imprisonment. Smith appeals, arguing that the district court improperly based its revocation on hearsay evidence despite the complaining witness's availability. Smith also argues that he was not given prehearing written notice of an additional uncharged criminal offense. We affirm.

## I. Background

On October 6, 2006, Smith pleaded guilty to possessing with intent to distribute at least fifty grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). On March 29, 2007, the district court sentenced Smith to thirty-one months' imprisonment, to be followed by four years of supervised release.

On February 2, 2012, Smith was charged by criminal complaint in Minnesota state court with one count of third-degree criminal sexual conduct. The complaint alleged that from June 5, 2011, to August 22, 2011, Smith, who was then thirty years old, had engaged in a sexual relationship with N.E., who was then between thirteen and fourteen years old. On February 6, 2012, Smith's probation officer, Stephanie Thompson, filed a petition to revoke Smith's supervised release, alleging that Smith had violated his supervised release conditions by, among other things, committing the offense of third-degree criminal sexual conduct as charged in state court. On June 13, 2012, the state court charge was dismissed without prejudice for N.E.'s failure to appear before trial and law enforcement's inability to locate her.

The district court held a revocation hearing on July 12, 2012, at which Brenna Sater, a former child protection case manager for the White Earth Band of Ojibwe, testified. Sater was assigned to N.E. in September 2011 after a Child in Need of Protection or Services (CHIPS) petition was filed on behalf of N.E., based on allegations of drug use and sexual contact with an adult. Upon the filing of the CHIPS petition, the police picked up N.E. and placed her at a non-secure juvenile detention center. Initially, in a September 2011 interview with Sater, N.E. denied having had

a sexual relationship with Smith.  (Sater testified at the revocation hearing that such denials are common for juveniles in such circumstances.)  In December 2011, N.E. violated the rules of her treatment center by using drugs and alcohol or being around others doing so, by seeing Smith, and by being out in the community unattended.  In a subsequent telephone conversation with Sater, N.E. became tearful and admitted to being with people who were using drugs and alcohol and that she indeed had had a sexual relationship with Smith.  N.E. also told Sater that she was upset because she had heard that Smith "cheated on her with a friend in the community" and as a result, N.E. "didn't care if [Smith] was in trouble[.]"

Later that month, Sater took N.E. to a formal forensic interview conducted by Carissa Bosch of Cass County Social Services and Red River Children's Advocacy Center.  During the ride back from the interview, N.E. continued discussing with Sater details of her contact with Smith, including their sexual relationship and drug use.  N.E. told Sater that she was afraid that if she was honest about the allegations against Smith, she would be in trouble.  Around Easter of 2012, N.E. failed to return to the juvenile facility from a home visit.  Beginning in June of that year, N.E. sent Sater text messages asking about the criminal charges against Smith and stating that she had lied about having had a sexual relationship with him.

Carissa Bosch testified at the hearing regarding her December 2011 forensic interview with N.E. concerning N.E.'s sexual relationship with Smith.  During the videotaped interview, N.E. disclosed that she had had a relationship with Smith during the summer of 2011 and that this "relationship consisted of oral, digital, and vaginal penile penetration, as well as illegal drug use of marijuana, methamphetamine, and snorting of prescription narcotics."  When asked whether she was worried that Smith might harm her, N.E. said that she was "not scared of [Smith]" and that Smith was "harmless."  N.E. also said, though, that she was "threatened" and "beat up" by others because of her relationship with Smith.  Although she believed that Smith had cheated on her, N.E. did not want to get Smith into trouble because she still cared for him.

During the interview, N.E. was nervous and embarrassed but able to answer questions. Bosch found N.E. to be credible.

Investigator Scott Blaine of the Becker County Sheriff's Department also testified at the hearing. Blaine became involved in the case after N.E. failed to appear at Smith's state court proceeding. In an effort to determine why N.E. did not appear, Blaine listened to phone calls made by Smith from his cell block, reviewed letters written by Smith to N.E. and others, and listened to audio recordings of Smith's jail visits. Blaine discovered ten phone calls made by Smith to N.E. in which Smith, despite recognizing that the calls were being monitored, surreptitiously attempted to persuade N.E. not to appear at his trial. During the phone calls, Smith also directed N.E. to read a letter for instructions regarding her non-appearance, although the letter was never discovered. In other letters written by Smith to N.E., Smith expressed affection for N.E. and alluded to having a sexual relationship with N.E. In letters addressed to his aunt, Smith wrote that if N.E. were not to appear at his trial, the state court charges against him would be dismissed. During jail visits with his grandmother and aunt, Smith muffled the recording device and, speaking through the glass partition, told them to find N.E. and prevent her from attending his trial. In a conversation with N.E. at a juvenile center after her non-appearance, N.E. told Blaine that she did not appear at Smith's trial because "she had gotten pressure from family members not to show up" and because she "didn't want to see [Smith] get in trouble."

Probation Officer Thompson also testified regarding Smith's other supervised release violations. N.E. did not testify at the hearing, nor did either party seek to compel her to do so.

Smith objected to the admission and consideration of N.E.'s out of court statements, arguing that under Federal Rule of Criminal Procedure 32.1(b)(2)(C), he was entitled to cross-examine N.E. at the hearing. The government argued that N.E. was a juvenile, that testifying at the hearing might disrupt her placement, that

testifying at the hearing might revictimize N.E. or subject her to further violence, that N.E.'s recantation was already in the record, and that Smith had already tampered with N.E.'s appearance in state court. The district court overruled the objection, finding that the testimony and other evidence offered in place of N.E.'s live testimony were sufficiently reliable and that good cause existed for N.E.'s non-appearance. The district court then found that Smith had violated the conditions of his release and sentenced him to thirty-one months' imprisonment.

## II. Discussion

Smith argues that the district court's consideration of N.E.'s out of court statements violated his limited due process rights and Federal Rule of Criminal Procedure 32.1(b)(2)(C) because he was deprived of his right to question N.E. "We review questions arising under the constitution *de novo*, but we review the claim of a Rule 32.1(b)(2)(C) violation for an abuse of discretion." United States v. Johnson, 710 F.3d 784, 787 (8th Cir. 2013) (quoting United States v. Martin, 382 F.3d 840, 844 (8th Cir. 2004)).

"A defendant is not entitled to a trial during a revocation hearing; the rules of evidence do not apply and the government's burden of proof is lowered." Id. at 788. Under Federal Rule of Criminal Procedure 32.1(b)(2)(C), a defendant is entitled to "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear[.]" "[T]he Supreme Court has held that 'the minimum requirements of due process . . . include . . . the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).'" Johnson, 710 F.3d at 788-89 (omissions in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 488-89 (1972) (discussing parolee rights)); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrissey rights to probationers). Accordingly, "a district court should 'balance the probationer's right to confront a

witness against the grounds asserted by the government for not requiring confrontation.'" Johnson, 710 F.3d at 789 (quoting United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986)). Among the factors a district court should consider are "the explanation the government offers of why confrontation is undesirable or impractical" and "the reliability of the evidence which the government offers in place of live testimony." Id. (quoting Bell, 785 F.2d at 643); see also United States v. Martin, 371 F.3d 446, 448-49 (8th Cir. 2004).

The government offered ample justification for why producing N.E. at the revocation hearing would be undesirable. N.E., a juvenile with a history of substance abuse, had engaged in a months-long sexual relationship with Smith. At the time of the hearing, N.E. was at a juvenile center, removal from which reasonably could have undermined her progress. N.E. had already failed to appear at Smith's state court proceeding, despite the issuance of a subpoena—a result that Smith procured through his successful campaign of compelling her not to appear. See Martin, 382 F.3d at 842-43, 846 (good cause existed for admitting out of court statements of witness who refused to testify at state court trial against her physically and sexually abusive boyfriend, who she believed "had ties to a 'crime family'" and whose family pressured her into not testifying). Given that N.E. had previously been subject to physical harm because of her relationship with Smith, the government's concerns of retribution against N.E. for testifying were not unfounded.

The government also demonstrated that the testimony and other evidence offered in place of N.E.'s live testimony were reliable. N.E. confirmed on multiple occasions to Sater and in a videotaped interview with Bosch that she had had a sexual relationship with Smith. In making these statements, N.E. provided intimate details about Smith and her sexual relationship with him. N.E.'s statements were also corroborated by Smith's repeated attempts to prevent her from testifying at his state court trial. Although N.E. initially and ultimately denied having had a sexual

relationship with Smith, such a denial is not uncommon in these circumstances, as recounted in Sater's earlier-described testimony.

Accordingly, because the government's explanation for not producing N.E. was reasonably satisfactory and because the testimony and other evidence offered in place of N.E.'s live testimony were sufficiently reliable, the district court did not abuse its discretion by admitting N.E.'s out of court statements at the revocation hearing.

Smith also argues that the district court improperly found witness tampering to be an alternative basis for revocation. Specifically, he argues that he was not given prehearing written notice of such a violation, as required by Federal Rule of Criminal Procedure 32.1(b)(2)(A). In support of his argument that such a finding was made, he relies on the district court's observation that his "interfering with a witness" was "a violation of state law as well." The record is clear, however, that the district court made this statement in the course of explaining that Smith had engaged in criminal conduct by engaging in a sexual relationship with N.E. Contrary to Smith's assertion, the district court did not make a formal finding, even alternatively, that Smith's interference with N.E.'s appearance at his state court trial itself constituted a violation of his supervised release conditions.

## III. Conclusion

The judgment is affirmed.

_____