# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1246
_____

United States of America

*Plaintiff - Appellee*

v.

Stevenson G. Harrison

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - Springfield
_____

Submitted: September 25, 2015
Filed: December 23, 2015
_____

Before WOLLMAN, COLLOTON, and KELLY, Circuit Judges.
_____

WOLLMAN, Circuit Judge.

Stevenson G. Harrison appeals from the district court's[1] order revoking his supervised release and imposing a sentence of 24 months' imprisonment. Harrison argues that the district court erred by admitting hearsay evidence at the revocation

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

hearing and by finding that the Virginia offense of assault on a law enforcement officer constituted a crime of violence and thus a Grade A violation under the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines). Having reviewed the district court's decision to revoke supervised release for abuse of discretion and its determination of the facts underlying that decision for clear error, we affirm. See United States v. Boyd, 792 F.3d 916, 919 (8th Cir. 2015).

After Harrison completed a federal sentence of imprisonment and began serving a term of supervised release, the government filed a revocation petition, alleging that Harrison had violated several conditions of his supervised release. At the revocation hearing, Harrison admitted several violations but denied that he had committed the alleged two felony offenses of assault on a law enforcement officer in the Commonwealth of Virginia. To prove the violations, the government called as a witness United States probation officer Bradley Cox, who testified to the facts set forth in the government's revocation petition, as well as the facts described in two Virginia arrest warrants and in a Virginia police incident report. Harrison objected to Cox's testimony, arguing that it consisted solely of information provided to him by others who were not present to testify and therefore violated Harrison's right to confront and cross-examine witnesses under Federal Rule of Criminal Procedure 32.1. The district court overruled Harrison's objections.

Cox testified that he had spoken with Robert Hagy, Harrison's supervising federal probation officer in Virginia, who told Cox that on August 29, 2014, Detective Robin McCoy, Detective R.T. Foster, and Sergeant Patricia Eller of the Bristol, Virginia, police department attempted to arrest Harrison on an outstanding felony warrant. When the officers tried to handcuff Harrison, he struggled, fought, attempted to flee, and eventually broke free of the officers. As Harrison started to run down a flight of stairs, Sergeant Eller and Detective McCoy grabbed onto Harrison's shirt in an effort to stop him. The officers held on while Harrison continued down the stairs, but Harrison's shirt ripped, and the two officers fell down the stairs, sustaining

injuries that required medical attention. Detective Foster, who witnessed these events, continued to pursue Harrison, who managed to escape. Later that day, four arrest warrants were issued for Harrison in Bristol, Virginia. Two of the warrants were related to Harrison's altercation with Sergeant Eller and Detective McCoy and charged the felony offense of malicious injury to a law enforcement officer in violation of Virginia Code section 18.2-51.1. The warrants stated that Harrison had maliciously caused bodily injury to Eller and McCoy with the intent to maim, disfigure, disable, or kill. The other two warrants charged Harrison with resisting arrest and obstruction of justice, both misdemeanor offenses, the details of which were described in an incident report filed by the officers. Harrison was eventually arrested in Florida on November 14, 2014.

After the district court admitted this evidence and found that Harrison had committed the violations alleged in the revocation petition, the court heard a statement from Harrison in which he made several admissions regarding the altercation with the Virginia officers. Harrison stated, "Do I deny that I ran . . . ? I do not deny that. . . . I ran out. And as I ran out, they grabbed my shirt." Tr. of Revocation Hr'g at 25. He acknowledged that the revocation petition and the incident report stated that the officers "grabbed my shirt, and my shirt ripped and they slipped and fell down the steps," but he insisted, "I didn't assault anyone. I ran down some stairs and they slipped and they fell." Id.

Harrison first argues that the district court abused its discretion by admitting the hearsay statements, which had the effect of violating Harrison's limited due-process right to confront and cross-examine the absent witnesses. Because a revocation hearing is not a criminal trial, the rules of evidence do not apply, and the government bears a lesser burden of proof. See Boyd, 792 F.3d at 919; see also 18 U.S.C. § 3583(e)(3) (stating that a court may revoke supervised release if the court finds a violation by a preponderance of the evidence). A defendant is entitled to "an opportunity to . . . question any adverse witness unless the court determines that the

-3-

interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). The district court "must balance the [the defendant's] right to confront a witness against the grounds asserted by the government for not requiring confrontation." United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986). The court should consider the reasons offered by the government to explain "why confrontation is undesirable or impractical" and the reliability of the evidence offered by the government in place of live testimony. Id. at 643. If the government "demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable," the defendant may not be entitled to confrontation. Id. The district court did not conduct this balancing test on the record at the revocation hearing, but we may perform the analysis on review because the underlying facts have been sufficiently developed. See United States v. Martin, 382 F.3d 840, 845 (8th Cir. 2004).

The government did not expressly offer an explanation for not producing the live testimony of the Virginia probation officer who spoke with Cox about Harrison's violations or the Virginia officers who prepared the incident report and swore to the arrest warrants after their altercation with Harrison. It is apparent from the record, however, that the live testimony of these witnesses would have been unreasonably burdensome, impractical, and costly given the considerable distance they would have been required to travel. See, e.g., Bell, 795 F.2d at 644 (noting that "considerable expense" to secure the personal appearance of Kansas officers at a revocation hearing in Arkansas weighed in favor of finding good cause not to require appearance, but declining to reach the issue). The facts presented here are distinguishable from those presented in United States v. Johnson, 710 F.3d 784, 786 (8th Cir. 2013), where the government offered no explanation for the arresting officer's unavailability, even though the defendant's revocation hearing was held in the same state in which the absent officer's duty station was located. See Bell, 785 F.2d at 644-45 (holding that the government failed to show that presenting live testimony of officers at revocation

hearing in Arkansas would have caused significant difficulty when those officers were also located in Arkansas).

In addition, the government demonstrated that the Virginia arrest warrants and incident report bore indicia of reliability sufficient to dispense with the officers' live testimony. Whether a police report is sufficiently reliable is a question we examine "on a case-by-case basis, considering all the relevant circumstances, including any admissions that may have been made by the [defendant]." Id. at 644. Unlike a typical police report in which an officer transcribes facts offered by a third-party victim, the incident report in this case was authored by the very officers who were themselves the victims of and eyewitnesses to the assault. On this point, too, Johnson, which involved police reports setting forth the facts as described by third-party witnesses and victims, is distinguishable. 710 F.3d at 787. Detective Foster, who participated in the attempted arrest and witnessed the altercation, authored his report on the day the incident took place. Detective McCoy, one of the victims of the assault, authored her detailed and comprehensive report only four days later. These two reports were filed while the incident was fresh in the officers' memories, and they set forth a consistent account of the event. The two arrest warrants were issued by a magistrate judge of the Commonwealth of Virginia, who found probable cause to believe that Harrison had committed the felony offense of malicious injury to law enforcement officers Eller and McCoy based upon the sworn statement of McCoy, herself a victim of the assault.

Moreover, Harrison's own statements at the revocation hearing sufficiently corroborate the arrest warrants and incident report to make it clear that they were reliable. See Bell, 785 F.2d at 644. As noted above, Harrison admitted to all of the conduct set forth in these documents. Harrison does not dispute that he ran from officers after they tried to arrest him; that the officers grabbed his shirt in an effort to stop him from fleeing; or that he forcibly pulled away from them, tearing his shirt and causing the officers to fall down a flight of stairs. Harrison asserted only that this

conduct, and the consequences flowing therefrom, should not constitute malicious assault of a law enforcement officer under Virginia law—a legal argument rather than a factual dispute. See Holley v. Commonwealth, 604 S.E.2d 127, 130 (Va. Ct. App. 2004) (noting that intent "is a state of mind which may be proved by a person's conduct" and that "a person is presumed to intend the immediate, direct, and necessary consequences of his voluntary act" (citations omitted)). Again, the fact of these admissions distinguishes Johnson, where the defendant made no such statements to corroborate the hearsay evidence.

Accordingly, because producing the live testimony of the Virginia officers at the Missouri revocation hearing would have been unreasonably burdensome and impractical, and because the evidence offered in place of that testimony was sufficiently reliable, the district court did not abuse its discretion by admitting Cox's testimony and the Virginia arrest warrants and incident report.

Harrison next argues that the district court erred in determining that the Virginia felony offense of "malicious bodily injury to law-enforcement officers," Va. Code Ann. § 18.2-51.1, is a "crime of violence" as defined by U.S.S.G. § 4B1.2(a) and thus a Grade A violation of supervised release under U.S.S.G. § 7B1.1(a)(1). Harrison contends that, under the categorical approach to statutory interpretation, see Descamps v. United States, 133 S. Ct. 2276, 2285 (2013), the district court could consider only the statutory elements of the Virginia offense and not the facts of Harrison's conduct in determining whether the offense was a crime of violence under the Guidelines, see United States v. Lynch, 611 F.3d 932, 935 (8th Cir. 2010) (examining statutory elements of state offense to determine whether alleged violation of supervised release was crime of violence under § 4B1.2(a)). He further contends that because the government offered no proof of the statutory elements of the Virginia offense, the district court erred in concluding that it was a crime of violence and thus a Grade A supervised-release violation under the Guidelines. We review *de novo* a district court's determination that an offense qualifies as a crime of violence under

the Guidelines.  See United States v. Tessmer, 659 F.3d 716, 717 (8th Cir. 2011) (per curiam), cert. denied, 132 S. Ct. 1985 (2012).

Under § 7B1.1(a)(1) of the Guidelines, a Grade A violation of supervised release is defined to include the commission of a "crime of violence" that is punishable by more than one year in prison.  A "crime of violence" is defined under § 4B1.2(a)(1) of the Guidelines as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another."  The two Virginia warrants of arrest identify the specific statutory provision that Harrison allegedly violated, Virginia Code section 18.2-51.1, and directly quote the pertinent statutory language, alleging that Harrison "maliciously cause[d] bodily injury to [Eller/McCoy] with intent to maim, disfigure, disable[,] or kill, and knowing or having reason to know that such person was a law enforcement officer . . . engaged in the performance of public duties."  Add. of Appellant 5-6.  Thus, the district court had before it the statutory elements of the Virginia offense, which "has as an element the use, attempted use, or threatened use of physical force against the person of another," as required to qualify as a crime of violence and as a Grade A violation under the Guidelines.[2]  Accordingly, the district court did not err in concluding that the Virginia offense qualified as a crime of violence and a Grade A violation of supervised release.

The judgment is affirmed.

KELLY, Circuit Judge, dissenting.

A district court may revoke a defendant's term of supervised release if the court, "pursuant to the Federal Rules of Criminal Procedure applicable to revocation

---

[2]Harrison does not appear to dispute that, considering only the statutory elements of the offense, a violation of Virginia code section 18.2-51.1 categorically qualifies as a crime of violence.

or probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). Though not all rules applicable to criminal trials apply strictly to revocation hearings, the defendant is entitled to "question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). If the government asserts that confrontation is "undesirable or impractical," the district court must balance the defendant's "right to confront a witness against the grounds asserted by the government for not requiring confrontation." United States v. Bell, 785 F.2d 640, 642–43 (8th Cir. 1986). Only if "the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable" has it made a sufficient showing of good cause to overcome the defendant's right to confront the witnesses against him. Id. at 643. If the government fails to make such a showing, the defendant retains the right to confront the witnesses whose testimony may result in the revocation of his supervised release. United States v. Johnson, 710 F.3d 784, 789 (8th Cir. 2013).

Here, the government failed to present any evidence to support a finding that producing live testimony would have been unreasonably burdensome or impractical. As the court notes, at the revocation hearing the government offered no explanation for its failure to produce the live testimony of either the Virginia probation officer or the Virginia police officers. There is no evidence of which, or how many, witnesses would have been required at the hearing,[3] exactly how far they would have had to travel, the time required for their travel and testimony, the actual costs associated with their travel, or any professional obligations that would have prevented their travel. See Johnson, 710 F.3d at 789 ("Balancing the lack of an explanation for a witness's

---

[3]Given the nature of the hearsay evidence in this case, it seems entirely plausible that one officer's testimony could have corroborated the evidence and provided sufficient indicia of reliability to justify its admission without the live testimony of all four Virginia officers involved.

unavailability against the reliability of the police report, we hold that the district court erred" in allowing introduction of a police report without the testimony of the arresting officer). Perhaps we can take judicial notice of the geographical distance between Bristol, Virginia (assuming all relevant witnesses were located there—a fact not in the record), and Springfield, Missouri. But, there is no evidence in the record of how that distance created an inordinate burden on the government's ability to call live witnesses at the hearing. See Bell, 785 F.2d at 644 (declining to decide whether the "considerable expense" of travel between Wichita, Kansas, and the Eastern District of Arkansas would constitute good cause not to require live testimony of arresting officers). With no such evidence presented, I respectfully disagree that the facts were sufficiently developed at the district court such that we can properly conduct the required balancing test—weighing Harrison's "right to confront a witness against the grounds asserted by the government for not requiring confrontation"—on appeal.

The government's failure to demonstrate that producing live testimony would be unreasonably or inordinately burdensome is, in my view, fatal by itself to its argument that there was good cause to overcome Harrison's right to confrontation. However, I also am not persuaded that the hearsay evidence admitted bore sufficient indicia of reliability to justify the lack of live testimony. Probation officer Bradley Cox's testimony was entirely based on his review of the police report and arrest warrant, as well as his conversation with Virginia federal probation officer Robert Hagy. Hagy, in turn, apparently had received his information about the incident from Virginia state probation officer Eddie Blevons. Though the police report does contain first-person narratives of the incident, we have "previously questioned the reliability of police reports as evidence of criminal conduct." Johnson, 710 F.3d at 789 (citing Bell, 785 F.2d at 644). "While police reports may be demonstrably reliable evidence of the fact that an arrest was made, they are significantly less reliable evidence of whether the allegations of criminal conduct they contain are true." Id. (quoting Bell, 785 F.2d at 644). Here, the officers who wrote the reports were also victims of the

alleged assault. Whether the reliability of a police report is bolstered when the report's author is also the alleged victim—or whether it is, instead, undermined—is not a question that has a readily apparent answer.

I also disagree that Harrison's own statements meaningfully corroborated the police report and arrest warrant. Harrison admitted to several of the key facts described in the reports, such as "[running] out of the probation board" and continuing to run even after the officers had grabbed his shirt. His characterization of the incident was that the officers slipped and fell while pursuing him. Harrison's statements at the revocation hearing, however, did not corroborate the whole of the police report, which included that Harrison "struggled and fought" with the officers and "continued to fight with [them], pulling away and swinging at [them]." The report also included the legal conclusion that Harrison "assaulted" the police officers as they were attempting to detain him. Thus, Harrison disagreed with both factual assertions and legal conclusions contained in the police report, and it was the whole of the police report upon which the district court relied when revoking Harrison's supervised release and imposing sentence.

The government failed to demonstrate that producing one or more live witnesses at the revocation hearing was unreasonably burdensome or impractical, and the evidence offered in its place lacked sufficient indicia of reliability to warrant denying Harrison the right to confrontation. As a result, I would conclude that the district court abused its discretion in admitting the disputed evidence. I would therefore not reach the question of whether the district court properly conducted the required categorical analysis to determine if the alleged offense was a crime of violence under USSG § 4B1.2(a).

———————————————