# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1432
_____

United States of America

*Plaintiff - Appellee*

v.

Emily Protsman

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: June 13, 2016
Filed: July 21, 2016

_____

Before RILEY, Chief Judge, MURPHY and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Emily Protsman appeals the district court's[1] revocation of her term of supervised release. She argues that the district court erred in finding hearsay evidence admissible under Federal Rule of Criminal Procedure 32.1(b)(2)(C), and in finding

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sufficient evidence to establish that she violated the terms of her supervised release. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I.

Protsman began a five-year term of supervised release in June 2014 after serving a prison sentence for committing disaster benefits fraud. In December 2015, the United States Probation Office filed a petition to revoke Protsman's term of supervised release. A first and second supplemental petition followed. The second supplemental petition, filed in January 2016, alleged one Grade B violation, a new law violation of wire fraud, and four Grade C violations, including failure to truthfully answer inquiries and failure to notify the Probation Office of a change in employment. Protsman contested each allegation, and a hearing was held in January 2016.

At the hearing, Protsman's probation officer, Chris Pauley, testified that the Iowa City Police Department informed him that the Sierra Vista, Arizona Police Department was investigating a potential wire fraud involving Protsman. Protsman's counsel objected to the testimony as violating Protsman's right to confront and cross-examine witnesses under Fed. R. Crim. P. 32.1, and the objection was taken under advisement. Pauley testified that Sunny Allred had contacted the Sierra Vista Police Department reporting that someone had fraudulently withdrawn money from her bank account with Navy Federal Credit Union. Investigation revealed that $4,000 from Allred's account was transferred to Protsman's bank account with Veridian Credit Union. Pauley testified that he questioned Protsman and Protsman claimed to have no knowledge of the $4,000 transfer. Pauley also stated that he had asked Protsman about a $1,300 check endorsed by Protsman and deposited into her account, but that she denied any knowledge of the deposit.

Next, Trina Becker, the manager of the Loss Prevention Department at Veridian Credit Union, testified. Protsman objected once at the beginning of Becker's

testimony, citing only Fed. R. Crim. P. 32.1. Becker went on to testify that Protsman had endorsed and deposited the $1,300 check into Protsman's account at Veridian Credit Union. Further, Becker testified that the Veridian Credit Union had received a document from Navy Federal Credit Union stating that Navy Federal Credit Union believed a $4,000 transfer to Protsman's account was fraudulent and requesting the money's return. This form, along with a number of Veridian Credit Union documents, including documents showing that Protsman endorsed and deposited the $1,300 check, acknowledged the bank's two-day hold policy, and made withdrawals after the two-day period, were entered into evidence, subject to Protsman's objection to the Navy Federal Credit Union form. Becker also testified that Protsman made several ATM withdrawals from her account after the $1,300 deposit. Becker explained that she had questioned Protsman about the $4,000 transfer, and that Protsman stated that it was for work she had done with a corporate moving business, relocating employees. Becker recounted that when she asked Protsman if this work had been for Sunny Allred, the owner of the account from which the money was wired, Protsman replied that she was sure that she had in fact performed this work for Allred, but would need to find her documentation. She further stated that Protsman claimed to be the victim of hacking. Becker explained that another wire transfer had been made to Protsman's account a few days later from a popcorn company, and that when Becker asked the owner of the popcorn company about the transfer, the owner explained that it was intended for a shipping company and not Protsman.

Additionally, Pauley testified that Protsman's account received deposits from Brown's Floor Care in Iowa City, Iowa. The checks were legitimate and endorsed by Protsman. Protsman never reported to the probation office that she was employed by Brown's Floor Care.

The district court concluded that Pauley's testimony about the investigation and the Navy Federal Credit Union form was admissible. The district court reasoned that the individuals with whom Pauley spoke were in Arizona, so it would be

impracticable to present live testimony from them and that the evidence presented was reliable. Regarding the Navy Federal Credit Union form, the district court reasoned that it was "routine in the industry," relied on by the relevant credit unions, and Becker was available for cross-examination. The district court found that Protsman's counsel had only objected to one question asked of Becker, which was never answered, so Becker's testimony was admissible as well.

Based on this record, the district court found by a preponderance of evidence that Protsman had committed the new law violation of wire fraud, failed to truthfully answer inquiries, and failed to notify her probation officer of an employment change. The violations yielded a guideline range of 18 to 24 months imprisonment. Based on these three violations and six prior violations, the district court sentenced Protsman to 18 months imprisonment, to be followed by a three-year term of supervised release.

II.

On appeal, Protsman argues that the district court erred in admitting Pauley's testimony, the Navy Federal Credit Union form, and Becker's testimony, in violation of Fed. R. Crim. P. 32.1(b)(2)(C), because Protsman was not given an opportunity to cross-examine the hearsay declarants. Protsman also alleges that the district court erred in finding sufficient evidence to establish the three violations.

A.

We review claimed violations of Fed. R. Crim. P. 32.1(b)(2)(C) for an abuse of discretion. United States v. Martin, 382 F.3d 840, 844 (8th Cir. 2004). In probation-revocation proceedings, the court "must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation." United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986). "First, the court should assess the explanation the government offers of why confrontation is

undesirable or impractical." Id. at 643. For instance, the court will consider the expense and difficulty incurred for the travel of out-of-state witnesses. Id. at 644; see United States v. Harrison, 809 F.3d 420, 423 (8th Cir. 2015) ("It is apparent from the record, however, that the live testimony of these [Virginia] witnesses would have been unreasonably burdensome, impractical, and costly given the considerable distance they would have been required to travel."). Second, the court must consider "the reliability of the evidence which the government offers in place of live testimony." Bell, 785 F.3d at 643. "Where . . . the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation." Id.

Protsman argues that the court erred in admitting Pauley's testimony regarding the investigation in Arizona. The detective and witness Pauley spoke with were in Arizona, which the district court reasonably recognized as making confrontation impracticable. See Harrison, 809 F.3d at 423. Protsman argues that the witnesses should have been made available by telephone, but this court has yet to require this of the district court. Further, the information Pauley testified to learning from the detective and Allred is that $4,000 had been wired to Protsman's account, without Allred's permission. Pauley confirmed the transfer of the $4,000 to Protsman's account, and thus provided corroboration. The district court "weighed the practicalities of the situation and reliability," and found the testimony admissible. Given the district court's careful weighing of the Fed. R. Crim P. 32.1(b)(2)(C) factors, we find that it did not abuse its discretion in admitting Pauley's testimony with respect to the Arizona investigation.

Protsman also contends that the court erred in admitting the record from Navy Federal Credit Union to Veridian Credit Union that identified the $4,000 transfer to Protsman's account as likely fraudulent, arguing that it is unreliable because it does not indicate why the $4,000 transfer was identified as likely fraudulent. However, the district court noted that the Navy Federal Credit Union was located in Virginia, that

the type of document offered was routine in the industry, maintained in the normal course of business, and that Ms. Becker was available for cross-examination. The court concluded that it was "extremely reliable." The district court did not err in determining that, under the Fed. R. Crim P. 32.1(b)(2)(C) balancing test outlined in Bell, the form was admissible.

Finally, Protsman challenges the district court's decision to admit Becker's testimony that the owner of the popcorn company had told her that the funds transferred from the company's account to Protsman's account were intended for a shipping company and that the owner had not previously heard of Protsman. However, the district court found that the objection was not preserved because Protsman only objected to one question addressed to Becker, and Becker did not answer that question. We reject Protsman's argument on this issue by concluding that even if the objection was preserved, Fed. R. Crim P. 32.1(b)(2)(C)'s balancing test supports admitting the evidence, because the company is located in Texas, and Becker provided the corresponding incoming wire information, which was received by the district court without objection. See Martin, 382 F.3d at 845 (the appellate court can conduct the balancing test if the underlying facts are sufficiently developed). Protsman's alleged concerns, including how Becker identified the popcorn company on the transfer and obtained the name of the owner, could have been addressed in her cross-examination of Becker.

B.

Next, Protsman contends that the admitted evidence was insufficient for the court to find that she committed wire fraud, failed to answer questions truthfully, and failed to notify her probation officer of a change in employment. We review the district court's decision to revoke supervised release and underlying fact findings for clear error. Harrison, 809 F.3d at 422. The violation need only be established by a preponderance of the evidence. 18 U.S.C. § 3583(e)(3).

To establish wire fraud, the court must find "(1) intent to defraud, (2) participation in a scheme to defraud, and (3) the use of a wire in furtherance of the fraudulent scheme." United States v. Rice, 699 F.3d 1043, 1047 (8th Cir. 2012). The evidence established that a $4,000 wire transfer was made into Protsman's bank account from the bank account of Allred. Allred reported to the police that this transfer was not authorized. Pauley verified that this deposit occurred and asked Protsman about it. Protsman told Pauley that she had no idea why the $4,000 was transferred to her account. When questioned by Becker, Protsman said she was involved in a corporate moving business and that she was sure that the money was payment for work she had done for Allred, but that she would need to check. The court did not commit clear error in finding that the evidence of the wire transfer and Protsman's statements to Becker, attempting to justify the wire transfer although later disavowing the transfer in answering Pauley's questions, were sufficient to support the finding that Protsman had committed wire fraud by a preponderance of the evidence.

Further, the district court did not commit clear error in finding that Protsman had failed to truthfully answer inquiries from her probation officer, Pauley. The government alleged that Protsman lied to Pauley when she denied knowledge of the various deposits and subsequent withdrawals from her bank account. When Pauley asked Protsman about the $4,000 deposit, she claimed to not know what it was. However, Protsman told Becker that she knew that the $4,000 was for work performed for Allred, although she would need to check. Further, the documents admitted into evidence show that Protsman endorsed the $1,300 check and signed the acknowledgment of the bank's policy placing a two-day hold on the funds. Protsman made withdrawals following the end of the two-day hold. When asked by Pauley about the $1,300 check, she claimed ignorance and purported to be the victim of fraud. The district court did not err in finding that the government met its burden.

-7-

Finally, Protsman challenges the sufficiency of the evidence supporting the finding that she failed to notify the probation office of a change in employment. The evidence submitted showed that Protsman received a number of legitimate, consistent checks from Brown's Floor Care, which she deposited or cashed. The checks' "memo" blanks are filled in with a word which appears to be "moving." Pauley testified that Protsman did not inform him that Brown's Floor Care was a source of income. Thus, the district court did not commit clear error in finding that a preponderance of evidence supported this charge.

## III.

For these reasons, we find that the district court did not abuse its discretion in admitting evidence or commit clear error in determining that Protsman committed the three violations. We affirm.

_____