# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2714
_____

United States of America

*Plaintiff - Appellee*

v.

Keisha Leighann Boyd

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 16, 2015
Filed: July 2, 2015

_____

Before WOLLMAN, SMITH, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Keisha Leighann Boyd appeared before the district court at a sentencing revocation hearing. Boyd faced revocation based on multiple technical violations of her supervised release and based on an allegation of burglary or theft. The district court determined that Boyd had committed a Grade A violation and sentenced her to 19 months imprisonment. We reverse and remand for further proceedings.

I.

Boyd was convicted of aiding and abetting the distribution of methamphetamine. After one unsuccessful attempt at supervised release that resulted in additional prison time, Boyd was again placed on supervised release in January 2014. In May 2014, the government sought to revoke Boyd's supervised release. At the revocation hearing, Jay Hudson, Boyd's supervising probation officer, testified he had been assigned only in May 2014 to supervise Boyd after Michelle Sims, Boyd's previous supervising probation officer, retired.

Officer Hudson began testifying about Boyd's alleged violations of supervised release. Boyd objected under Federal Rule of Criminal Procedure 31.2 because Hudson testified based on the file maintained by the probation office. Boyd argued "just because the probation officer [Sims] is not working there does not mean she is not available" and "this witness [Hudson] has no personal knowledge of whether [the underlying violations] did or did not happen." (Revoc. Tr. at 11 and 13.) The district court overruled the objections, holding that because Officer Hudson, the now-supervising probation officer, was available to testify concerning the contents of Boyd's probation file, it was unnecessary to "go get Michelle Sims off retirement and subpoena her a couple of hundred miles away to come into the courtroom and testify about it." (Revoc. Tr. at 28.)

Jonesboro Police Officer Brandon King testified that Jonesboro police officers conducted a traffic stop of Boyd's vehicle based on a tip Officer King had received indicating Boyd was involved with stolen property. During the stop, Boyd admitted to Officer King that there was stolen property in the vehicle. She also admitted knowing additional stolen property was at a local motel. Boyd escorted the officers to the motel where they recovered additional stolen property. Boyd was charged in state court with burglary and theft of property.

After hearing Officer King's testimony, the district court determined Boyd's personal knowledge of the stolen property "would indicate that she was involved with it in some way." (Revoc. Tr. at 27.) After hearing arguments from the parties concerning whether the government had proven burglary or just theft, the district court found that Boyd had committed a Grade A violation of her supervised release, which has a recommended revocation range of 15-21 months imprisonment. See United States Sentencing Commission, Guidelines Manual, § 7B1.4(a) (stating range of imprisonment for a Grade A violation with a Category II criminal history is 15-21 months). Based on that violation, the district court sentenced Boyd to 19 months imprisonment.

Boyd appeals, arguing (1) the district court violated her confrontation rights when it permitted Officer Hudson to testify in the place of Officer Sims without first determining that Officer Sims was unavailable, and (2) the district court abused its discretion in determining Boyd committed a Grade A violation when there was no evidence she had committed a burglary and no evidence as to the value of the property, which would be necessary for a felony theft conviction.[1] We reject Boyd's first argument but agree with her second. Accordingly, we reverse the district court's finding of a revocation violation and remand for further proceedings.

II.

The district court has the discretion to revoke supervised release if the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release. 18 U.S.C. § 3583(e)(3) ("The court may . . . revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in

[1]Boyd also argues the district court abused its discretion when it declined her motion to continue the hearing to allow her time to subpoena a witness. As we reverse her revocation on other grounds, this issue is moot.

-3-

such term of supervised release . . . if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release."). "We review the district court's decision to revoke supervised release for an abuse of discretion." United States v. Ahlemeier, 391 F.3d 915, 919 (8th Cir. 2004). "[T]he court's subsidiary factfinding as to whether or not a violation occurred is reviewed for clear error." United States v. Carothers, 337 F.3d 1017, 1019 (8th Cir. 2003) (quotation omitted). "Under clear error review, we may reverse only if we have a definite and firm conviction that the District Court was mistaken." United States v. Willis, 433 F.3d 634, 636 (8th Cir. 2006) (quotation omitted).

## A.

First, we consider Boyd's argument that the district court erred in allowing Officer Hudson to testify in substitution for Office Sims, who had retired, thus depriving Boyd of her right to question adverse witnesses. A supervised release defendant is not entitled to a trial during a revocation hearing, the rules of evidence are inapplicable, and the government has a lower burden of proof. See United States v. Johnson, 710 F.3d 784, 788 (8th Cir. 2013). However, "[a] defendant is entitled to 'an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear.'" Id. (quoting Fed. R. Crim. P. 32.1(b)(2)(C)). When making this determination, the district court "must balance the probationer's right to confront a witness against the grounds asserted by the government for not requiring confrontation." United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986). Although there are no set rules for conducting this balancing of interests, as we stated in Johnson, there are several common concerns to consider:

> "First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical." Second, a trial court should consider "the reliability of the evidence which the government offers in place of live testimony." Ultimately, if "the government neither

shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation."

Johnson, 710 F.3d at 789 (citations omitted) (quoting Bell, 785 F.2d at 643).

In Johnson, we reversed the district court when it allowed a probation officer to read a police report into the record, reasoning "the lack of an explanation for a witness's unavailability against the reliability of the police report" balanced in favor of the defendant's right to confront an adverse witness. Id.

This case presents a closer question than the one we addressed in Johnson. First, the government does offer an explanation for Officer Sims's absence—she had retired from the probation office. While retirement alone should not always excuse an officer from testifying in a revocation hearing, it does bear on the officer's availability. Second, Officer Hudson's testimony was based on a probation document produced by his agency, whereas in Johnson, the probation officer was seeking to testify about a police report prepared by officers of a separate law enforcement agency. See id. at 786. The testimony here concerned a document designed to report on the status of a supervised release defendant, and Officer Hudson is personally familiar with the processes for creating that document. And as Officer Hudson now serves as Boyd's supervising probation officer, the reliability of his testimony is more certain than that of a probation officer testifying about a police report created by another agency and designed to report on possible criminal activity. While the court should have inquired further about Officer Sims's present residence, whereabouts, and availability to testify, we cannot say the court abused its discretion when it allowed Officer Hudson to testify in substitution for Officer Sims.

B.

Next, we address Boyd's argument that the government failed to present sufficient evidence to support the district court's determination that she committed a Grade A violation of her supervised release. The Sentencing Guidelines classify supervised release violations as one of three "grades": A, B, or C. See USSG § 7B1.1. Grade A violations are, as relevant here, for "conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, . . . or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years." USSG § 7B1.1(a)(1). The district court determined that Boyd committed a Grade A violation. At the hearing, counsels' argument and the district court's comments focused on whether Boyd committed burglary, theft of property, or theft by receiving of property.[2] The district court did not, however, state which offense it found Boyd committed. The government contends the district court determined Boyd was involved in a burglary, and burglary is normally considered to be a crime of violence, see United States v. Bearden, 780 F.3d 887, 896 (8th Cir. 2015) (holding generic burglaries constitute crimes of violence for purposes of USSG § 4B1.2(a)), which constitutes a Grade A violation, while, under Arkansas law, the highest penalty for theft of property or theft by receiving stolen property is 20 years as Class B felonies, which would only qualify under the Sentencing Guidelines as a Grade B violation. See Ark. Code Ann. § 5-36-103(b)(1)(a) (theft of property exceeding $25,000 constitutes a Class B felony); Ark. Code Ann. § 5-36-106(e)(1) (theft by receiving of property exceeding $25,000 constitutes a Class B felony); Ark. Code Ann. § 5-4-401(a)(3) ("For a Class B felony, the sentence shall be not less than five (5) years nor more than twenty (20) years."); USSG § 7B1.1(a)(2) (Grade B violations for "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year").

---

[2]Questions also arose concerning the value of the stolen property, however the district court prohibited the government from presenting testimony about the value.

The only evidence about the stolen property came from the testimony of Officer King.  He testified that when officers stopped a vehicle in which Boyd was a passenger" (1) she admitted to knowing the property in the vehicle was stolen, (2) she denied involvement in a burglary and claimed another person had stolen the property, (3) she had knowledge of additional property that had been stolen at the same time as the property in the vehicle, and (4) she knew the location of that additional stolen property.

"'[T]he basic elements' of generic burglary" are "'unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime.'" Descamps v. United States, 133 S. Ct. 2276, 2283 (2013) (quoting Taylor v. United States, 495 U.S. 575, 599 (1990)).  Under Arkansas law, "[a] person commits residential burglary if he or she enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential occupiable structure any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1); see Young v. State, 288 S.W.3d 221, 225 (Ark. 2008) (recognizing the statute does not require that property actually be stolen).  The government did not present any evidence that Boyd entered a structure (residential or otherwise) or even that the stolen property in question came from a residence, building, or structure.  At best, the evidence presented at the revocation hearing could show only that Boyd had knowledge that the property was stolen.  Accordingly, the district court, even under the low preponderance of the evidence standard, was without sufficient evidence to find that Boyd participated in a burglary, and thus the determination that Boyd had committed a Grade A violation was clearly erroneous and warrants remand.

III.

Accordingly, we reverse the district court's finding of a supervised release violation and remand this matter to the district court.  On remand, the record as it

pertains to a claim of burglary may not be expanded because the government knew of its obligation to present sufficient evidence of burglary and inexcusably failed to comply with this obligation. See Johnson, 710 F.3d at 790. Because the district court prohibited the government from presenting evidence as to the value of the stolen property, the government may expand the record on that issue.

_____