# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2213

_____

United States of America

*Plaintiff - Appellee*

v.

Karina Carrasco

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 11, 2016
Filed: March 4, 2016
[Unpublished]

_____

Before LOKEN, ARNOLD, and BENTON, Circuit Judges.

_____

PER CURIAM.

Karina Carrasco appeals the district court's[1] revocation of her supervised release and her resulting sentence. We affirm.

_____

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

Carrasco pleaded guilty to importing marijuana, *see* 21 U.S.C. §§ 952(a) and 960(b)(4), and began serving a term of supervised release following her imprisonment. Carrasco's supervised release was conditioned on her refraining from unlawfully using controlled substances, and Carrasco was required to wear sweat patches that could detect her use of them. After several of her patches tested negative for controlled substances, no fewer than nine subsequent patches tested positive for methamphetamine.

Carrasco, who denied any drug use, then paid to have hair and nail samples collected and tested. The record shows that a hair test could detect illegal substances between 14 and 90 days after their use, but we have found nothing in the record that reveals the corresponding detection range for a nail test. Both samples tested negative for illegal substances, including methamphetamine. But five more sweat patches tested positive for methamphetamine in the following months, and the district court revoked Carrasco's supervised release based on the methamphetamine-positive tests.

The district court may revoke supervised release "if the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release." *United States v. Boyd*, 792 F.3d 916, 919 (8th Cir. 2015). We review the district court's findings of fact for clear error. *Id.*

Carrasco maintains that the district court clearly erred by giving more weight to the fourteen methamphetamine-positive sweat patches than to the methamphetamine-negative hair and nail samples. She argues, essentially, that since the evidence is in equipoise, the district court erred in finding that it preponderated in the government's favor. But the evidence is not in equipoise: We have explained that sweat patches are generally reliable in detecting drug use and that hair tests are not, *United States v. Meyer*, 483 F.3d 865, 869–70 (8th Cir. 2007), and evidence of the general accuracy and reliability of hair and nail tests is wholly absent from the present record. Although "[t]here may well be certain instances where offenders offer

compelling reasons to believe that positive test results from sweat patches are erroneous," *id.* at 869, Carrasco offers no convincing explanation for these positive results. She provides nothing beyond her unsupported denials of drug use and the results of her hair and nail tests. We also note that the hair and nail samples were not taken on the same days as any of the patch tests, so there is no necessary conflict between the tests so far as the record goes. And Carrasco does not argue that there is.

Even if we assumed that the hair and nail tests cast some doubt on the validity of the positive sweat-patch tests that preceded them, those tests could have little if any similar effect on the results of sweat patches tested later or outside the hair and nail tests' detection ranges. "One time, at least in the context of probation, is one time too many." *Id.* at 871. We therefore cannot say that "we have a definite and firm conviction that the District Court was mistaken" in finding that the government proved by a preponderance of the evidence that Carrasco violated a condition of her supervised release. *See Boyd*, 792 F.3d at 919.

Carrasco also maintains that the district court's sentence of twelve months' imprisonment followed by five additional years of supervised release is substantively unreasonable. Carrasco's Guidelines sentencing range was three to nine months' imprisonment and up to life of supervised release, and she faced a statutory maximum sentence of 24 months' imprisonment.

We review the substantive reasonableness of a revocation sentence for an abuse of discretion. *United States v. Goodon*, 742 F.3d 373, 376 (8th Cir. 2014). Carrasco does not explain how the district court abused its discretion: She contends only that the punishment is excessive and unreasonable. But the sentence is well within statutory limits, and the district court reviewed and applied the 18 U.S.C. § 3553(a) sentencing factors, giving particular attention to protecting the public and Carrasco's refusal to acknowledge her drug problem. The sentence is therefore well within the

district court's discretion. *See United States v. Larison*, 432 F.3d 921, 922–24 (8th Cir. 2006).

Affirmed.

_____