United States Court of Appeals

For the Eighth Circuit

_____

No. 19-2812

_____

United States of America

*Plaintiff - Appellee*

v.

Arlando C. Staten

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: November 20, 2020
Filed: March 8, 2021
[Published]

_____

Before COLLOTON, MELLOY, and KELLY, Circuit Judges.

_____

PER CURIAM.

While serving a term of supervised release, Arlando Staten was arrested on the allegation that he had violated several conditions of his supervised release, including committing another crime by participating in several bank robberies. The district

court[1] revoked his supervised release on August 8, 2019, and imposed a 24-month sentence followed by one year of supervised release. Staten appeals, arguing that there was insufficient evidence to find that he violated the conditions of his supervised release and that his new sentence is substantively unreasonable. Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

I.

On March 12, 2015, Staten pleaded guilty to possessing a firearm as a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). He was sentenced to 57 months' imprisonment and a three-year term of supervised release, which he began serving in September 2018. Among other conditions, Staten was prohibited from associating with any person engaged in criminal activity or convicted of a felony, possessing a firearm, using drugs, or committing another crime, and he was required to maintain a job.

In December 2018, after Staten tested positive for the use of cocaine, his probation officer filed a violation report. Staten waived his right to a hearing and agreed to serve two consecutive days in custody.

On June 21, 2019, Staten's probation officer filed a second violation report alleging that Staten had failed to maintain a job and associated with a person convicted of a felony. Most seriously, the probation officer alleged that Staten had committed a bank robbery on June 20, 2019. Two weeks later, on July 2, the probation officer filed a supplemental violation report alleging that Staten was in possession of a handgun when he was arrested for bank robbery; and on August 5, the probation officer filed another supplemental violation report connecting Staten to a

---

[1]The Honorable Beth Phillips, Chief Judge, United States District Court for the Western District of Missouri.

June 7, 2019 bank robbery. The probation officer recommended that the court revoke Staten's supervised release.

The district court held a revocation hearing on August 8, 2019. Staten admitted that he had failed to maintain a job and had associated with a person convicted of a felony, Hubert Holmes,[2] but he denied that he had committed a crime. The government elicited testimony from FBI Agent Jonathan Spaeth regarding Staten and Holmes's suspected involvement in a series of six bank robberies in 2018 and 2019.

Agent Spaeth testified that the FBI began investigating Holmes in May 2019 and found evidence linking him to six total bank robberies, five of which occurred in Missouri and one in Kansas. A common feature of all five Missouri bank robberies was a blue Chrysler Town & Country van, which was seen near each bank when the robberies occurred and was suspected of being the getaway vehicle. Using exterior surveillance footage taken during the final robbery, the FBI captured the van's license plate and identified Holmes as the van's registered owner.

Agent Spaeth described the five Missouri bank robberies, of which only the final three had direct evidence of Staten's involvement. The first robbery occurred on December 26, 2018, and the second on May 21, 2019. During each, a blue van matching the description of Holmes's van was seen in the area, and at one, Holmes's DNA was found on a stocking cap left behind by the robber.

The third (attempted) robbery occurred on June 7, 2019. Based on surveillance video, the suspect who approached the bank wore a hooded sweatshirt with the hood

---

[2]At the hearing, the government proffered that Holmes's probation officer conducted a monitoring visit to Holmes's residence on June 5, 2019. During the visit, she noted that Holmes and Staten, both of whom had been convicted of federal offenses and were under supervision, were present in the home. Staten did not object to this proffer and agreed it was consistent with his admission.

pulled over his head and his hair poking out from underneath, and he carried a white plastic bag and a handgun. Eyewitnesses described him as in his mid-twenties, approximately six feet tall, slender, and having dreadlocks. This description closely matches Staten, who was then 26 years old, 6'1", weighed approximately 150 pounds, and had maintained his hair in dreadlocks since at least 2015. The suspect entered the bank and walked up to the teller counter. When the bank teller ran, the suspect also ran without getting any money, dropping the white plastic bag on his way out. Surveillance footage captured the same blue van circling the parking lot. Forensic analysis on the white plastic bag had not been completed by the time of Staten's revocation hearing.

The fourth robbery occurred approximately 50 minutes later at a different Kansas City bank. Surveillance footage captured an older man walking up the bank's sidewalk, carrying a manila envelope and wearing a stocking cap, while the same blue van circled the building. The man successfully robbed the bank but left behind the manila envelope when he fled the scene. Forensic testing on the envelope discovered a fingerprint belonging to Holmes and a palm print belonging to Staten.

The fifth robbery took place on June 20, 2019. Surveillance video from an adjacent business captured the same blue van, with two people inside, parked in front of a bank. One person, wearing a blue baseball cap, got out of the van and entered the bank. Once inside, he removed the cap and placed it on a counter. After demanding cash from the teller, he grabbed money from the teller drawer and walked out of the bank, leaving behind the blue baseball cap. Forensic testing later revealed that DNA on the baseball cap matched Holmes's DNA.

Once outside of the bank, the man walked past the blue van toward a nearby alley, and the van then backed up to the alley. After accidentally dropping some money onto the ground, he bent down and tried to grab the bills that were blowing in the wind. He collected some of the dropped money then walked over to the driver's-

side sliding door, opened it, and appeared to fall backwards into the van as it began to drive away. From its vantage point, the surveillance camera captured footage of the van's driver, who appeared to match Staten's general physical description.

A few hours later, police located the blue van and began to follow it. After seeing Holmes and Staten go into a convenience store together, they stopped the van. Officers arrested Holmes, who was driving, and Staten, who was sitting in the front passenger seat. The police conducted searches incident to arrest and found that Holmes had a substantial amount of U.S. currency on him, including five bait bills[3] that were stolen that afternoon. They also found that Staten had $400 in $100 and $50 bills that were similar in appearance and crispness to the bills Holmes possessed but were not bait bills.

Agent Spaeth testified that after Holmes and Staten were arrested and placed in a patrol wagon, a video camera captured a conversation between the two. Although the ambient noise of the vehicle's air conditioning made it difficult to hear all of their conversation, Holmes and Staten were recorded discussing DNA, laughing about six bank robberies, and talking about a "star witness." Staten waived his Miranda rights and told law enforcement investigators that he had previously met Holmes in a halfway house. He denied any involvement in the bank robbery earlier that day and stated that he had met up with Holmes at the convenience store immediately before their arrest.

Police obtained a search warrant of Holmes's blue van, which they executed on June 21, and they found a loaded handgun under the front passenger seat. They

---

[3]Agent Spaeth testified that a "bait bill" is a bill for which the bank has recorded the unique serial number. Banks place bait bills in bank teller drawers so that if a robbery occurs, the banks will know the serial numbers of the currency that was stolen. This enables law enforcement to later trace the specific bills stolen by the robbers.

also found a black sweatshirt in the driver's seat of the van that appeared similar in color to the clothing worn by the getaway driver during the June 20 robbery.

At the conclusion of the hearing, the district court found that Staten had violated the conditions of his supervised release, including by committing a new offense, which it treated as a grade A violation under the United States Sentencing Guidelines § 7B1.1(a)(1). Based on that violation and Staten's criminal history category III, the advisory Guidelines range was 18 to 24 months. The district court revoked Staten's supervised release and sentenced him to 24 months' imprisonment followed by a one-year term of supervised release.

II.

A district court may "revoke supervised release if the government proves by a preponderance of the evidence that the defendant violated a condition of supervised release." United States v. Boyd, 792 F.3d 916, 919 (8th Cir. 2015); see 18 U.S.C. § 3583(e)(3). We review the revocation of supervised release for abuse of discretion, and we review any "subsidiary factfinding as to whether or not a violation occurred" for clear error. United States v. Long, 843 F.3d 338, 340 (8th Cir. 2016) (quoting Boyd, 792 F.3d at 919). Under clear error review, we reverse a revocation decision only if we have "a definite and firm conviction that the District Court was mistaken." United States v. Petersen, 848 F.3d 1153, 1156 (8th Cir. 2017) (quoting Boyd, 792 F.3d at 919).

The district court found by a preponderance of the evidence that Staten violated the terms of his supervised release by committing a new offense. Although the court acknowledged that there was "no one piece of information that [was] the proverbial smoking gun," it found that a "combination of all of the pieces of evidence" established that Staten had participated in one or more bank robberies. The court found relevant that Staten was a known associate of Holmes, that his appearance was

not inconsistent with the appearance of the suspect from the attempted June 7 robbery, that a manila folder left behind by the robber during the completed June 7 robbery bore Staten's palm print, that his appearance was not inconsistent with the appearance of the getaway driver from the June 20 robbery, that when arrested he had $400 in bills that were similar to the appearance of bait bills in Holmes's possession, that a handgun was found under Staten's seat in Holmes's blue van, and that Staten and Holmes discussed six bank robberies (the same number of robberies in the series of robberies implicated in this case) after they were arrested. Having carefully reviewed the record, we find that the district court did not clearly err in finding these facts. Moreover, we agree that, taken together, these facts show by a preponderance of the evidence that Staten violated a condition of his supervised release by committing a new offense.

We review the substantive reasonableness of a sentence for abuse of discretion. United States v. Hall, 931 F.3d 694, 696 (8th Cir. 2019). "A district court abuses its discretion in sentencing if the district court fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." Petersen, 848 F.3d at 1157 (cleaned up).

In imposing its sentence, the district court emphasized the nature of bank robberies and the serious risks they pose to the community, particularly in light of Staten's underlying felon-in-possession conviction, which involved "prowling [and] attempted-break-in factors that [also] created a risk to the community." Based on our review of the record, the court sufficiently considered the sentencing factors, 18 U.S.C. §§ 3553(a), 3583(e)(3), and did not rely on an improper factor or commit a clear error of judgment. Staten's primary argument is that the district court erred by placing too much weight on circumstantial evidence that was insufficient to prove by a preponderance that he committed a new criminal offense. As noted above, however, the district court did not err in its findings, and his argument is therefore

unavailing.  The district court did not abuse its discretion when it imposed a within-Guidelines sentence.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

_____