# United States Court of Appeals
### For the Eighth Circuit

_____

No. 19-3384

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Phillip Mitchell

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2021
Filed: June 29, 2021

_____

Before LOKEN, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

In a blocked-off alley in downtown Des Moines, barbs became blows when Anthony Mitchell swung at Georan Churchill. After that fight, the district court[1]

---

[1]The Honorable John A. Jarvey, Chief Judge, United States District Judge for the Southern District of Iowa.

revoked Mitchell's supervised release and handed down a 24-month sentence. We affirm.

## I. Background

After serving a 48-month sentence for unlawful firearm possession, *see* 18 U.S.C. § 922(g)(1), Mitchell began a 36-month supervised-release term. Mitchell faced revocation if he committed another federal, state, or local crime during this term.

In late September 2019, Mitchell and two friends drove into a Des Moines alley, not realizing it was blocked off. Moments before, Churchill and a friend had walked into the same alley.

Churchill and Mitchell disagreed about much of what happened next, including whose friend "started" the fight and how. But they agreed that their friends exchanged harsh words and, while both Mitchell and Churchill tried, neither managed to prevent their friends from exchanging punches. Churchill captured a twenty-six-second video of the escalating tension on his phone.

According to Churchill, Mitchell grabbed him from behind, threw him to the ground, and then kicked his face repeatedly. He also testified that he never swung at Mitchell nor turned toward him. Churchill said that he left the alley with a concussion, broken bones in his face, and a cut on his face which required stitches. A photo taken soon after the fight shows swelling, stitches, and cuts on his face. In court, while Churchill's eye still looked swollen and red, he said that an intervening fall caused his on-the-stand appearance.

Mitchell's testimony differed. He thought that one friend screamed for help while multiple people attacked his other friend. While running to help his friends, Mitchell saw Churchill turning around with his hand "flying towards" Mitchell's

face.  Mitchell responded by punching Churchill in the nose and then "kept running." Mitchell denied kicking Churchill.

When the government learned about the fight, it asked the district court to revoke Mitchell's supervised release.  The government alleged that Mitchell violated Iowa law by willfully injuring Churchill.  *See* Iowa Code § 708.4(2).  After hearing evidence and arguments, the district court found that the government proved by a preponderance of the evidence that Mitchell violated his supervised release.  That finding relied on Churchill's testimony, which the district court viewed as "credible in every respect."  It pointed to Churchill's video, a 911 call, and Mitchell's admissions as corroborating evidence.  In the district court's view, Churchill's video, his injuries, and his conduct contradicted Mitchell's testimony.

At sentencing, the government asked for a 24-month sentence, which the parties agreed fell within the appropriate range under the United States Sentencing Guidelines Manual, as well as a 6-month supervised-release term.  Mitchell asked for "much less" but did not ask for a specific sentence.

The district court decided on 24 months with no supervised release.  In doing so, it considered "good things[,]" like Mitchell's strong work ethic.  It also considered Mitchell's "history of problems[,]" including his "repeated" and "escalating" supervised-release violations.  And because Mitchell's "conduct" and "not the classification" guided its sentencing decision, the district court said that it would "do the same thing" even if the conduct did not amount to a willful injury under Iowa law.

## II.  Discussion

Mitchell asks us to reverse the district court's supervised-release revocation and the sentence it imposed.  This record does not support either request.

## A. Willful Injury

Under Iowa's willful-injury statute, "[a]ny person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury[.]" Iowa Code § 708.4(2). The statute then assigns different state felony classes based on the injury caused—a class C felony for causing a "serious injury" and a class D for causing a "bodily injury[.]"[2] *Id.* § 708.4(1)–(2).

Another provision in the same chapter defines "serious injury" to include a "bodily injury." *Id.* § 702.18(1)(b) (cleaned up). A "bodily injury": (1) "[c]reates a substantial risk of death"; (2) "[c]auses serious permanent disfigurement"; or (3) "[c]auses protracted loss or impairment of the function of any bodily member or organ[.]" *Id.* The Iowa Supreme Court has broadly read "bodily injury" as meaning "to cause 'physical pain, illness, or any impairment of physical condition.'" *Jima v. Barr*, 942 F.3d 468, 472 (8th Cir. 2019) (quoting *State v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981)); *accord State v. Gordon*, 560 N.W.2d 4, 6 (Iowa 1997).

## B. Revocation

The district court had discretion to revoke Mitchell's supervised-release term if it found, by a preponderance of the evidence, that he violated a condition of that term. *See* 18 U.S.C. § 3583(e)(3). We review the district court's revocation decision for an abuse of discretion. *United States v. Boyd*, 792 F.3d 916, 919 (8th Cir. 2015). And we review its underlying fact-finding—whether Mitchell violated his supervised release by committing a new state crime (Iowa Code § 708.4)—for clear error. *Boyd*, 792 F.3d at 919.

---

[2]After first charging Mitchell with a class D felony, the local police, in consulting with the county attorney, later bumped it up to a class C felony.

Mitchell argues that insufficient evidence supported the revocation decision because, as he asserts, the government did not prove the underlying state crime's intent and injury elements.

First, in asserting that he acted in self-defense, Mitchell argues that the government needed—but failed—to prove that he *intended* to seriously injure Churchill.[3] Even if we agreed with Mitchell's premise, sufficient evidence existed to satisfy the intent element. The district court viewed Churchill's testimony as unequivocally credible. *See United States v. Carothers*, 337 F.3d 1017, 1019 (8th Cir. 2003). By determining that other evidence (e.g., the video, the 911 call, Mitchell's admissions, and Churchill's injuries) corroborated Churchill's testimony and contradicted Mitchell's, "the district court implicitly found that [Churchill's] testimony was credible and that [Mitchell's] was not credible." *Id.* "Because credibility determinations are 'virtually unreviewable on appeal,'" Mitchell's first argument fails. *Id.* (quoting *United States v. Hernandez*, 281 F.3d 746, 748 (8th Cir. 2002)).

Next, Mitchell argues that the government did not prove the serious-injury element. He highlights the absence of any medical witnesses. He also notes that while Churchill's face may have looked injured at the revocation hearing, Churchill hurt himself subsequent to the alley fight.

We conclude that the record contains enough evidence to satisfy the serious-injury element via the broad definition for "bodily injury." *See McKee*, 312 N.W.2d at 913. Mitchell admitted to punching Churchill in the face. And the post-fight photo shows Churchill's face—with swelling, stitches, and cuts—before he injured himself.

---

[3]We decline the invitation to raise the burden of proof from preponderance of the evidence to clear and convincing. *See* 18 U.S.C. § 3583(e)(3).

For these reasons, Mitchell has not shown that the district court clearly erred in its finding that he, more likely than not, committed a new state crime. As a result, we cannot say that the district court abused its discretion in revoking his supervised release.

## C. Sentencing

Mitchell next challenges the substantive reasonableness of his 24-month sentence. Because we presume that a within-Guidelines sentence is reasonable, Mitchell must rebut that presumption and show that he should have received a lower sentence. *See United States v. Goodale*, 738 F.3d 917, 926 (8th Cir. 2013).

Mitchell argues that his employment during his supervised release should have factored more heavily into his sentence. The district court recognized Mitchell's strong work ethic and his consistent employment. It also considered his repeated supervised-release violations and his conduct in the alley fight. Even though Mitchell may have preferred for the district court to give more weight to his work ethic and employment status, we cannot say that the district court abused its discretion in weighing other factors more heavily. *See United States v. Campbell*, 986 F.3d 782, 808 (8th Cir. 2021).

## III. Conclusion

We affirm the district court's judgment.

_____