# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2272
_____

United States of America

*Plaintiff - Appellee*

v.

Jeremiah James Lynch

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern
_____

Submitted: January 11, 2023
Filed: July 13, 2023
[Unpublished]
_____

Before KELLY, ERICKSON, and STRAS, Circuit Judges.
_____

PER CURIAM.

In 2004, Jeremiah Lynch pleaded guilty to drug and firearm charges. After serving his prison sentence, he began his first term of supervised release. In 2018, Lynch's supervised release was revoked, and he was ordered to serve 21 months in prison, followed by a 2-year term of supervised release. Lynch's second term of

supervised release began in April 2021. On June 2, 2022, the district court[1] again revoked Lynch's supervised release and imposed a 51-month sentence and an additional 5-year term of supervised release. Lynch appeals.

## I.

On May 3, 2022, Lynch's wife Alyssa Lynch (Alyssa) contacted the Davenport Police Department to report that Lynch had assaulted her the night before. Officer Justin Adams responded and spoke with Alyssa in person. According to Officer Adams, Alyssa told him that she and Lynch got into a verbal argument that turned physical when Lynch grabbed her, hit her arms, and "started to strangle her." On May 6, 2022, a Temporary Protective Order for domestic abuse was filed against Lynch. Later that same day, Lynch violated the order and was arrested.

Shortly thereafter, the United States probation office petitioned for revocation of Lynch's supervised release, alleging two violations: (1) his May 6 arrest (a Grade C violation); and (2) commission of the state law offense of domestic assault by strangulation[2] on May 2 (a Grade A violation). See United States Sentencing Guidelines § 7B1.1(a) (describing the three grades of supervised release violations); id. § 7B1.4(a) (specifying the range of imprisonment applicable upon revocation based on the grade of the violation).

Lynch contested the violations, and the district court held an evidentiary hearing. At the hearing, Officer Adams testified about his conversation with Alyssa on May 3. He also described his conversation with Alyssa's daughter, K.C., who

---

[1]The Honorable Stephanie M. Rose, Chief Judge, United States District Court for the Southern District of Iowa.

[2]The petition alleged "Domestic Assault/Impeding Blood/Airflow-Strangulation with Injury," which we shorthand here as domestic assault by strangulation. See Iowa Code § 708.2A(5). Lynch was not charged with domestic assault in state court.

told him that she heard her mother and Lynch arguing the night of the May 2 assault. According to Officer Adams, K.C. said that her mother had yelled for her to call the police. K.C. then saw Lynch "attempting to strangle her mother." The government also introduced photographs of Alyssa taken after Officer Adams arrived. The photos depicted red marks and bruises at various spots on Alyssa's upper chest, neck, and arm. And Lynch's supervising probation officer, Kristin Schrems, testified about a text she received from Alyssa on May 5. The text read: "Hey Kristin, this is Jeremiah's wife, Alyssa. I just want to let you know a warrant has been issued for his arrest. He seriously assaulted me in front of our children. He could have killed me. He's been messing up REAL bad lately with everything."

Alyssa also testified. She explained that she and Lynch were "just tussling" the night of May 2, that "[h]e didn't beat [her] up," and that "[h]e didn't hit [her]." She also said that Lynch "did not try to choke [her]." Alyssa conceded she told law enforcement otherwise, but insisted she only did so to get a protection order against Lynch. She said she "exaggerated everything that happened" that night. Alyssa also denied sustaining bruises or having any difficulty breathing as a result of her altercation with Lynch. As to the text message to Officer Schrems, Alyssa described that, too, as an effort to get Lynch "in trouble" and "to make him out as a bad guy."

At the conclusion of the hearing, the district court found by a preponderance of the evidence that Lynch had committed both alleged violations. The more serious of the two violations—domestic assault by strangulation—was a Grade A violation, see USSG § 7B1.1(a)(1), which resulted in an advisory Guidelines range of 51–63 months. See id. § 7B1.1(b) ("Where there is more than one violation of the conditions of supervision, . . . the grade of the violation is determined by the violation having the most serious grade."). The district court imposed a 51-month sentence, with a 5-year term of supervised release to follow.

II.

On appeal, Lynch does not contest that he violated the terms of his supervised release. Rather, he challenges the classification of his state offense violation, arguing that the government merely established that his May 2 conduct constituted a Grade C—not a Grade A—violation for purposes of his advisory Guidelines range. We review the district court's "underlying fact-finding—whether [Lynch] violated his supervised release by committing a new state crime—for clear error." United States v. Mitchell, 2 F.4th 786, 789 (8th Cir. 2021) (internal citation omitted). To the extent the district court makes credibility determinations, they are "almost never clear error given that court's comparative advantage at evaluating credibility." United States v. Salsberry, 825 F.3d 499, 501 (8th Cir. 2016) (quoting United States v. Sandoval-Sianuqui, 632 F.3d 438, 443 (8th Cir. 2011)).

Lynch argues the district court erred by finding that there was sufficient evidence he committed the offense of domestic assault *by strangulation*. Under Iowa law, a defendant commits domestic assault by strangulation "by knowingly impeding the normal breathing or circulation of the blood of another by applying pressure to the throat or neck of the other person or by obstructing the nose or mouth of the other person, and causing bodily injury." Iowa Code § 708.2A(5) (2017). Domestic assault by strangulation is a felony punishable by a term of imprisonment of no more than five years. See id. §§ 708.2A(5), 902.9(1)(e). In contrast, a domestic abuse assault that only "causes bodily injury or mental illness" is a "serious misdemeanor" punishable by up to one year of imprisonment. See id. §§ 708.2A(2)(b), 903.1(1)(b). Therefore, the felony offense of domestic assault by strangulation is a Grade A violation under the Guidelines, whereas the serious misdemeanor offense of domestic abuse assault is a Grade C violation. See USSG § 7B1.1(a)(1)(A)(i) (providing in relevant part that Grade A violations include conduct constituting a state offense "punishable by a term of imprisonment exceeding one year that . . . is a crime of violence"); id. § 7B1.1(a)(3)(A) (providing in relevant part that Grade C violations include conduct constituting a state offense "punishable by a term of imprisonment of one year or less").

-4-

The difference between these two statutory provisions is significant for purposes of calculating Lynch's advisory Guidelines range. If Lynch's conduct constituted a Grade C rather than a Grade A violation, as he argues, his advisory Guidelines range would have been 8–14 months, rather than 51–63 months. See USSG §§ 7B1.1(b), 7B1.4(a).

The district court directly addressed Lynch's argument—the same one he raises on appeal—that the evidence was insufficient to prove that he "knowingly imped[ed Alyssa's] normal breathing or circulation of the blood." [3] See Iowa Code § 708.2A(5). The district court specifically found that "to leave bruises of that nature across that extensive portion of [Alyssa's] neck, [Lynch] had to have impeded her ability to breathe." The court said its conclusion was further supported by Officer Adams' testimony that both Alyssa and K.C. used the word "strangle" when describing the events of May 2, as well as by the text Alyssa sent to Officer Schrems stating, "He could have killed me." Alyssa's testimony was to the contrary, but the district court declined to credit it, finding it "grossly inconsistent with what [Alyssa] said at the time the injuries happened" and "[not] at all believable."

Lynch asserts in response that the evidence showed, at most, that he attempted to strangle Alyssa, not that he succeeded in "impeding [her] normal breathing or circulation of blood." Lynch points out that Alyssa said he "started to strangle her." And K.C. said she saw him "attempting to strangle" Alyssa. But even if Iowa Code § 708.2A(5) does not encompass attempts—a proposition on which we take no position—the district court found that Lynch did, in fact, impede Alyssa's breathing during the domestic assault. Given the testimonial and photographic evidence presented at the hearing, we see no clear error in the district court's finding, by a preponderance of the evidence, that Lynch's conduct on May 2 amounted to a domestic assault by strangulation.

---

[3]Lynch does not contest that he "appl[ied] pressure to the throat or neck" of Alyssa. He argues only that he did not "knowingly imped[e] [Alyssa's] normal breathing or circulation of [her] blood."

## III.

The judgment of the district court is affirmed.

_____